533 P.2d 553

.The STATE of Arizona, Appellee,

v.

Willie Lee RICHMOND, Appellant.

No. 2 CA–CR 402.

Court of Appeals of Arizona,
Division 2.
March 27, 1975.

N. Warner Lee, Former Atty. Gen., Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, Asst. Atty. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender by Frederic J. Dardis, Asst. Public Defender, Tucson, for appellant.

## OPINION

HOWARD, Chief Judge.

Defendant was found guilty by a jury of grand theft and sentenced to a term of not less than nine nor more than ten years in the Arizona State Prison. He claims: (1) That there was no evidence from which the jury could conclude he committed a theft of property valued at more than one hundred dollars; (2) that a statement he made which was admitted into evidence at trial was obtained in violation of his Sixth Amendment right to counsel; (3) that the same statement was obtained in violation of his Fifth Amendment protection against self-incrimination; (4) that the statement was obtained in violation of the Code of Professional Responsibility; and (5) that the court below erred when it admitted a prior consistent statement of the chief prosecution witness.

Defendant was charged by information with having committed first degree murder and robbery. The three principal characters in the charged crime were: Manuel Valenzuela, the victim; Rebecca Corella, a prostitute; and the defendant Willie Richmond. On the night of August 30, 1973, an undercover Tucson police officer, posing as an out-of-town purchaser of narcotics, bought three papers of heroin from defendant and Miss Corella. After inquiring about purchasing a larger quantity of heroin, the police officer was assured that such a buy could be arranged. Thereafter, defendant drove Miss Corella to the Airport Inn where she was introduced to Valenzuela. After consuming a few alcoholic beverages, Valenzuela and Corella left the Airport Inn, negotiated for her services as a prostitute, and drove in Valenzuela's pick-up truck to the residence of a friend of Corella's who was out of town. Within a matter of minutes, Valenzuela was shot twice, once in the head and once in the abdomen. Valenzuela's wallet, with thirty to thirty-five dollars and a credit card, his car keys, and his truck were taken.

It was the prosecution's theory that defendant either actually murdered Valenzuela or else he was legally responsible under the felony-murder doctrine. Defendant, according to the prosecution's theory, was motivated by a desire to get enough

money to consummate the larger heroin deal with the undercover agent. The prosecution introduced a statement made by defendant in which he denied shooting Valenzuela, claimed that Corella shot Valenzuela, and admitted that he and Corella had a plan whereby she would pick up a client for her services as a prostitute and he would rob the client. A key witness in the prosecution's case was Rebecca Corella. She testified that defendant fired the gun that killed Valenzuela. Defense counsel extensively cross-examined Corella, attempting to impeach her credibility through the use of prior inconsistent statements. In its rebuttal, the prosecution introduced a statement made by Corella to police officers shortly after her arrest in which she reiterated that defendant shot Valenzuela. After more than a week of trial, the jury returned a verdict finding defendant not guilty of murder and armed robbery, but guilty of grand theft.

The jury was instructed that:

"The theft of personal property less than $100 is petit theft. The theft of personal property of more than $100 is grand theft. Theft is the feloneous [sic] stealing, taking, carrying, leading or driving away the personal property of another. Theft has two elements. The defendant must take personal property owned by another person. The defendant must intend to deprive the owner of his property permanently."

The jury was not instructed in accordance with A.R.S. § 13–663(A)(2) that grand theft is also, "Theft of money or property from the person of another." The items taken from Valenzuela included a credit card, a wallet, about thirty-five dollars, and keys. Valenzuela's pick-up truck was also taken, but both defendant and the state agree that it is not included in a grand theft charge under A.R.S. § 13–663(A). State v. Thomas, 110 Ariz. 27, 514 P.2d 1023 (1973). The only way the jury could have found defendant guilty of grand theft was to find that the value of the property he stole exceeded one hundred dollars. Although there is no evidence in the record to support such a finding, the evidence does show the defendant guilty of petty theft. We therefore vacate the sentence and modify the judgment of conviction.

Defendant next contends that his statement which was admitted at trial was taken in derogation of Fifth and Sixth Amendment rights. The statement was taken after defendant was indicted and after counsel had been appointed to represent him. This statement was given to two police officers who went to the jail to serve defendant with an arrest warrant on another charge. Upon being served, defendant told the officers he wanted to make a statement.

■ In State ex rel. Berger v. Superior Court, 105 Ariz. 553, 468 P.2d 580 (1970), the Supreme Court held that a defendant could waive his right to have appointed counsel present during police questioning. In so holding, the Supreme Court overruled State v. Herman, 3 Ariz.App. 323, 414 P.2d 172 (1966), which held that where a defendant has retained counsel, "the defendant may not be questioned outside the presence of counsel without counsel's permission." Id. at 327, 414 P.2d at 176. Thus, if in the instant case there was sufficient evidence of a waiver of his constitutional rights, defendant's statement was properly admitted.

■■ There is no sacred litany required to prove a waiver of constitutional rights provided the heavy burden of showing defendant acted knowingly and voluntarily is met. State ex rel. Berger v. Superior Court, supra. The prosecution has borne that burden. Prior to making the statement, defendant was advised that:

"Q. Okay. Before we take this statement, I want to advise you of your rights, again for the record, okay?

A. Okay.

Q. You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to the presence of an attorney to assist you prior to questioning

and to be with you during questioning if you so desire. If you cannot afford an attorney, you have the right to have an attorney appointed for you prior to questioning. Do you understand these rights?

A. Yes.

Q. Now having been advised of these rights and understanding these rights, will you answer my questions?

A. Yes."

This warning adequately apprised defendant of his rights, and his voluntary decision to make the statement waived those rights. Nor can the conduct of the police be a violation of the Code of Professional Responsibility in view of State ex rel. Berger, supra. Even if there were such a violation, defendant has not referred this court to any case applying the exclusionary rule in such situations.

■ Defendant finally contends that the court erred in admitting Becky Corella's prior consistent statement. Prior consistent statements by a witness to refute impeachment on cross-examination rather than to prove the truthfulness of the statements themselves are admissible. State v. Gause, 107 Ariz. 491, 489 P.2d 830 (1971). The statement was made shortly after she was arrested. Defendant claims that since she was arrested, Corella had a motive to falsify her statement and therefore it should have been excluded. We have been unable to find one case which excludes a prior consistent statement simply because it was made after an arrest. In each of the following cases the prior consistent statement made by an accomplice after he had been arrested was admitted. People v. Neely, 163 Cal.App.2d 289, 329 P.2d 357 (1958); State v. Lupino, 268 Minn. 344, 129 N.W.2d 294 (1964) cert. denied 379 U. S. 978, 85 S.Ct. 681, 13 L.Ed.2d 569 (1965); State v. Kane, 9 N.J.Super. 254, 75 A.2d 894 (1950); People v. Singer, 300 N.Y. 120, 89 N.E.2d 710 (1949). The problem with defendant's argument was explained by Judge Learned Hand in Di Carlo v. United States, 6 F.2d 364 (2d Cir. 1925) cert. denied 268 U.S. 706, 45 S. Ct. 640, 69 L.Ed. 1168:

"He may indeed have already concocted a scheme to involve Di Carlo and Giallelli in a new crime, for the sake of insuring his own release, but it seems to us only theoretically possible. He had no reason to suppose that in so doing he would comply with any desire of the police." 6 F.2d at 366.

The sentence imposed by the trial court is set aside. Pursuant to A.R.S. § 13–1716 and State v. Rowland, 12 Ariz.App. 437, 471 P.2d 322 (1970), the judgment of conviction is modified to a conviction of petty theft. A.R.S. § 13–671[B].

As modified, the judgment is affirmed and the cause is remanded to the trial court for sentencing.

HATHAWAY and KRUCKER, JJ., concur.