571 P.2d 1060

**The STATE of Arizona, Appellee,**

v.

**Marcos Anthony ORTIZ, Appellant.**

**No. 2 CA–CR 1119–2.**

Court of Appeals of Arizona, Division 2.

Oct. 28, 1977.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, and Thomas G. Bakker, Asst. Attys. Gen., Phoenix, for appellee.

Reuben Moses Emanuel, Tucson, for appellant.

## OPINION

HOWARD, Chief Judge.

Appellant was indicted on one count of exhibiting a weapon not in self-defense in violation of A.R.S. § 13–916, as amended, and one count of possession of a pistol by a criminal in violation of A.R.S. § 13–919. The counts were severed for the purpose of trial and, having been convicted on both counts, appellant was sentenced to the Arizona State Prison for terms of not less than five nor more than ten years on Count One and not less than four nor more than five years on Count Two, the sentences to run concurrently.

In view of the nature of the questions presented, lengthy discussion of the facts is not necessary.

Count One was tried before the Honorable Richard N. Roylston. Two days before trial appellant filed a motion for continuance on the grounds that he was ill and unprepared to stand trial. On the morning set for trial he appeared in court with his defense attorney, an assistant public defender, and requested another attorney. When the court denied his request, appellant conducted himself in such a manner that the trial court was compelled to order him removed from the courtroom and commenced the trial in his absence. After his removal the matter of a continuance was taken up. Appellant's attorney told the court that a continuance was necessary because he had been told by his client that he had diabetes, tuberculosis and maybe a venereal disease. In denying the motion the trial court made the following remarks:

"Well, from his obstreperous conduct here in court, and during the last few minutes, why he wasn't noticeably ill. He is ill-tempered, but he didn't show any other signs of being ill. And from his movements in court, his ability to speak, his remarks that were made to the Court, it would seem to me that he is certainly able the endure the rigors of a trial."

The next day when upon his promise to behave, appellant was allowed to be in the courtroom defense counsel moved the court to have a psychiatric examination of appellant pursuant to Rule 11, Rules of Criminal Procedure, in order to determine whether appellant was able to assist counsel and stand trial.

■■■ Appellant claims the court erred in denying his motion. ° We do not agree. A motion for continuance is not granted as a matter of right. It is solely within the sound discretion of the trial judge whose decision will not be disturbed unless there is a clear abuse of discretion, and unless denial of the motion is shown to be prejudicial. *State v. Jackson*, 112 Ariz. 149, 539 P.2d 906 (1975). Appellant has shown neither prejudice, nor a clear abuse of discretion.

■■■ A court must order a mental examination pursuant to Rules 11.1 and 11.3 to determine if a defendant understands the proceedings or can assist in his defense if reasonable grounds for such an examination exist. *State v. Ohta*, 114 Ariz. 489, 562 P.2d 369 (1977). The trial court has broad discretion in determining if reasonable grounds exist and unless there has been a manifest abuse of this discretion, the trial court will be upheld. *State v. Ohta*, supra. No facts were presented to the trial court which would show reasonable grounds for a competency hearing, and therefore there was no abuse of discretion.

Count Two, the charge of possession of a pistol by a criminal was tried before a different trial judge and jury. Part of the corpus delicti proved to be that appellant had been convicted of a "crime of violence", which includes the crime of burglary. At the beginning of the proceedings the judge swore the jury panel for voir dire and asked members if anyone knew A. Bates Butler, III who was going to be a witness for the state. At the time of this questioning, juror Chesser had not been "called into the box". After a prospective juror who had been called into the box was excused, Chesser took the oath, informed the court that he had been able to hear all the questions previously asked of the panel and that he would not have responded to any of those questions in the affirmative.

Midway though the trial A. Bates Butler, III informed the court that he recognized Chesser. A hearing was held in chambers at which time Mr. Butler stated:

"He's a friend of my wife's family. I've met him, oh I don't know, three, five times, sometime, maybe up to ten times I've seen him. He's a very good friend of my brother-in-law. He and I looked at each other out in the hallway. I don't know if he recognized me or not. I recognized him."

Mr. Chesser was questioned by the court:

"THE COURT: Mr. Chesser, it has just come to the Court's attention that you know the family, or Mr. A. Bates Butler, the Third's wife's family, is that right, Mr. Butler?

Mr. BUTLER: Yes.

THE COURT: Do you recognize Mr. Butler?

MR. CHESSER: Yes. The only time I've seen Mr. Butler is at his wedding.

THE COURT: O.K., and I asked the jurors at the time we were asking questions whether or not anyone knew of any of the witnesses and I take it you feel you don't know Mr. Butler.

MR. CHESSER: I really don't. I know his wife.

THE COURT: Okay, you know his wife, and I take it you know his wife's family?

MR. CHESSER: Used to, yes.

THE COURT: Would the fact that Mr. Butler is going to testify as a witness in this case for the State cause you to be anything but fair and impartial as a juror in this case?

MR. CHESSER: I don't believe so. I think I can be fair.

\* \* \* \* \* \*

THE COURT: You don't feel that would influence you in anyway?

MR. CHESSER: No, I don't feel it would influence me.

\* \* \* \* \* \*

MR. MINKER: Is there some doubt in your mind that, as to whether it might influence you at all?

MR. CHESSER: There's no doubt in my mind. I think I can keep an impartial mind.

MR. MINKER: From your previous association and knowledge of Mr. Butler's family and contact you had with Mr. Butler, himself, have you any opinion whatsoever of whether he is a trueful [sic] person?

MR. CHESSER: I know very little of his work. I know him to be a truthful person as much as I know you to be.

MR. MINKER: Well, you say you don't have an opinion about his truthfulness?

MR. CHESSER: I really don't know the man."

After the foregoing discussion in chambers appellant moved for a mistrial which was denied.

■■ Appellant contends that Mr. Chesser's failure to disclose the information which was eventually disclosed in chambers unlawfully denied him a peremptory challenge. We do not agree. Assuming arguendo that Mr. Chesser's answer to the question posed to him by the court was misleading, it does not follow that false or misleading information elicited on voir dire examination will invariably and in all cases result in an illegal verdict. *State v. Garcia*, 102 Ariz. 468, 433 P.2d 18 (1967). As far as appellant was concerned, the danger in having Mr. Chesser on the jury was that he would unequivocally accept the testimony of Mr. Butler as being true. Had Mr. Butler testified as to facts which were in dispute, appellant's contention would be more compelling. However, Mr. Butler, a deputy county attorney, was used to prove that appellant was a criminal within the purview of A.R.S. § 13–919. To this end, he identified a copy of a judgment showing that Marcos Anthony Ortiz, the appellant, had been previously convicted of burglary and identified Mr. Ortiz at trial as being the same person to whom the conviction pertained. Appellant never disputed this conviction at trial and in fact, while Mr. Butler was testifying, appellant himself blurted out a statement which showed that he was indeed the one who was referred to in the judgment which was later introduced into

evidence. Under these circumstances we believe that an analogy can be drawn to the case of *State v. Garcia*, supra. There the court quoted with approval the Kentucky case of *Crutcher v. Hicks*, 257 S.W.2d 539, 39 A.L.R.2d 620 (1953):

" ' . . . If the false information is of such character as to indicate probable bias on the part of the juror, it may be presumed that a free exercise of the right of peremptory challenge has been so restricted as to result in prejudice to the party affected. *However, if information innocently withheld or given, although false, is so insignificant or trifling as to indicate only a remote or speculative influence on the juror, the right of peremptory challenge has not been affected.'* (Emphasis in original)" 102 Ariz. at 470, 433 P.2d at 21.

Here, the information withheld fails to indicate probable bias so as to raise the presumption of prejudice. Further, the facts do not show that there has actually been prejudice.

Affirmed.

HATHAWAY and RICHMOND, JJ., concur.