700 P.2d 855

STATE of Arizona, Appellee,

v.

Louis Anthony RODRIQUEZ, Appellant.

No. 1 CA–CR 5126.

Court of Appeals of Arizona, Division 1, Department A.

Nov. 23, 1984.

Reconsideration Denied Jan. 28, 1985.

Review Denied May 21, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., David R. Cole, Asst. Atty. Gen., Phoenix, for appellee.

George F. Klink, Phoenix, for appellant.

Louis Anthony Rodriquez, in pro. per.

## OPINION

GRANT, Presiding Judge.

On January 10, 1980, a fifteen-count indictment was returned against Louis Anthony Rodriquez, the appellant (defendant). The offenses arose out of sexual assaults committed against six victims. Defendant was also alleged to have committed acts of burglary, kidnapping and sexual abuse against the various victims. All of the assaults occurred between November 17 and December 25, 1979.

Prior to trial, defendant's counsel filed numerous motions, including motions to sever, suppress physical evidence and evidence of pretrial identifications. All motions were denied and defendant proceeded to trial. Following a lengthy jury trial, defendant was convicted on all counts. The trial judge ordered the sentences in Counts I through IX, XI, XII, and XV to run concurrently. He ordered the sentence in Count X to run consecutive to Count VIII, Count XIII consecutive to Count X and Count XIV consecutive to Count XIII. The total sentence imposed upon defendant was 101 years.

On appeal, defendant has raised the following number of issues:

1. Did the trial court err in permitting two victims to testify at trial when they had undergone pretrial hypnosis?
2. Did the trial court err in finding that pretrial identification procedures were not unduly suggestive?
3. Was defendant's right to counsel violated during a compelled physical lineup the day after his arrest?
4. Did the prosecutor commit misconduct by allowing a witness to view the defendant in a compelled lineup in an unrelated case?
5. Did the trial court abuse its discretion in refusing to allow defendant to call an expert witness on the issue of identification?
6. Was defendant entitled to a new finding of probable cause based on a discriminatory grand jury selection system?
7. Did the trial court abuse its discretion when it denied a request for a "neurological" examination of the defendant?
8. Did the trial court commit clear and manifest error when it denied defendant's motion to suppress physical evidence?
9. Did the admission of a photograph of one of the victims constitute error?
10. Did the trial court err in refusing to sever the counts for trial?
11. Did the trial court commit clear and manifest error when it denied defendant's motion to suppress statements?
12. Did the trial court err in refusing to give defendant's instruction?
13. Was the aggravated sentence imposed upon defendant lawful?
14. Did the prosecutor commit reversible error in his closing argument?

The counts alleged against defendant involved the sexual assaults of young women in the Mesa or Tempe area. The assaults occurred between November 17, 1979 and December 25, 1979. Defendant was arrested on January 2, 1980, when he was apprehended during the commission of an attempted burglary. Later that day, he was identified in a photographic lineup presented to one of the victims. On January 3, 1980, he was interviewed by a Mesa police officer and admitted committing numerous rapes in the Tempe and Mesa area. In the afternoon, he appeared in a physical lineup and was identified by three of the victims. Finally, the next day, he accompanied officers from Mesa and Tempe in a ride-around in which he identified several of the areas where he had committed the sexual assaults against the

victims. Statements made during the ride-around, on the previous day to Detective Hays, and written statements made by him were admitted into evidence at trial.

Further facts will be set forth as necessary to resolve the numerous issues raised by defendant.

## PRETRIAL HYPNOSIS OF VICTIMS

During the first day of trial, defense counsel advised the court that victims H. and M. had undergone hypnosis by the sheriff's department in an attempt to develop a "composite" identification of a suspect. Victim H. was shown no photographic lineups prior to her hypnosis which occurred on December 10, 1979, approximately two days after she was assaulted. Thereafter, she was unable to identify her assailant in any pretrial, photographic line-ups or physical lineups and did not identify him at trial. The other assault victim, M., underwent hypnosis on December 19, 1979, within two days of her assault. Thereafter, she was shown a photographic line-up, which did not include defendant's photograph, on January 1, 1980. She did not identify anyone at that time, but did identify defendant in the physical lineup on January 3, 1980.

During the second day of trial, the jury was excused while the court conducted a lengthy hearing into the events surrounding the hypnosis of these two victims. The entire hypnosis session had been tape recorded and the trial judge listened to the tapes. After listening to the evidence presented, including the tapes, the trial judge found that the hypnosis session had been confined solely to an attempt to reconstruct a composite picture of the suspect. The trial judge considered *State v. La Mountain*, 125 Ariz. 547, 611 P.2d 551 (1980), to be controlling. He relied upon the language in that case which stated: "A witness who has been under hypnosis ... should not be allowed to testify when there is a question that the testimony may have been produced by that hypnosis." *Id.* at 551, 611 P.2d at 555.

The trial judge, after listening to the tapes, stated that he was unable to find any evidence of suggestions being made during the hypnosis session. He found that simply putting a person under hypnosis and enhancing the memory in an attempt to produce a composite photograph was different than "developing or producing testimony by virtue of the hypnosis." The trial judge went on to state that there were no suggestions made during the hypnosis with regard to subsequent testimony and, therefore, the witnesses were allowed to testify.

The hypnosis and testimony in this case preceded the decision in *State v. Mena*, 128 Ariz. 226, 624 P.2d 1274 (1981), and, therefore, according to the decision in *State ex rel. Collins v. Superior Court*, 132 Ariz. 180, 644 P.2d 1266 (1982), the decision in *Mena* does not apply because it is given prospective application. In any event, we note that the holding, referred to above, in *La Mountain* was reaffirmed by the court in *Mena*. 128 Ariz. at 232, 624 P.2d at 1280. The court in *Mena* held that, "testimony ... which has been tainted by hypnosis should be excluded in criminal cases." *Id.* at 231, 624 P.2d at 1279. The court concluded by stating that:

> [T]estimony from witnesses who have been questioned under hypnosis regarding the subject of their offered testimony [is inadmissible] in criminal trials from the time of the hypnotic session forward.

*Id.* at 232, 624 P.2d at 1280.

At the outset, we note that the factual situations dealt with in *La Mountain* and *Mena* are strikingly different from that which faced the trial court in this case. The danger sought to be controlled by the decisions in *La Mountain* and *Mena* was the "production" of testimony through hypnosis. To the extent that the court could not determine what testimony had been "created" through hypnosis, the court determined that a witness who had been questioned "regarding the subject of their offered testimony" while under hypnosis would be incompetent to testify.

■ In *La Mountain*, the victim was shown a photographic lineup prior to going under hypnosis, was brought out of hypnosis and shown a lineup, then "put back under" and shown the lineup again. In *Mena*, the victim was questioned regarding the facts surrounding the incident that he would later testify to in court. The court was obviously concerned that the "facts" concerning the incident might have been implanted by the hypnotist during the session. 128 Ariz. at 228, 624 P.2d at 1276.

■ However, in this case, there was a complete recording of the sessions involving both victims. They were not questioned concerning their proffered testimony in court. They were not questioned regarding the facts surrounding their assaults. Both hypnotists were unfamiliar with the facts surrounding the assaults and sought solely to recreate a "composite" photograph of the suspect through memory enhancement. All of these precautions safeguarded against suggestibility in the hypnotic session. *State v. Stolp*, 133 Ariz. 213, 650 P.2d 1195 (1982). The trial judge correctly determined that their testimony regarding the incident in this case was not "produced" by that hypnosis. The hypnosis session was of limited duration, approximately 1½ to 2 hours and was recorded. The recording allowed the trial judge to determine whether the session "tainted" or "produced" testimony or concerned facts other than those testified to by the victims at trial. Furthermore, we note that victim H. was never able to identify the defendant and that victim M. did not identify anyone in a lineup shown on January 1st, but positively identified the defendant in a physical lineup on January 3, 1980. Her identification of defendant occurred within approximately two weeks of the date she had been sexually assaulted.

In *State v. Stolp*, our supreme court said:

> ... evidence obtained from leads developed from a hypnotic session is not susceptible to the unreliability problems connected with posthypnotic testimony, so long as the evidence is not a post-hypnotic statement of the person hypnotized. Such evidence cannot be suggested or confabulated; nor is it subject to any of the other dangers of hypnosis.

*Id.* at 215, 650 P.2d at 1197.

■ Finally, we hold that even had victim M.'s identification of defendant at trial been considered incompetent because of the prior hypnosis, such error would be considered harmless in view of defendant's identification of her apartment during the ride-around with the police on January 4, 1980. At that time he admitted sexually assaulting the woman who lived in the apartment and testified that he remembered her apartment because of the very large "Santa Claus" decoration which was on the door. *See, State v. Encinas*, 132 Ariz. 493, 647 P.2d 624 (1982) (hypnotized witness's testimony deemed insignificant in view of overwhelming evidence of guilt provided by defendant's own words and scientific evidence). *Id.* at 497, 647 P.2d at 628.

## PRETRIAL IDENTIFICATION PROCEDURES

Defendant argues that the identification procedures utilized in this case were so suggestive that they were unconstitutional on their face. He argues that two of the lineup procedures were unduly suggestive and that, in any event, the trial court's findings after hearing evidence at the *Dessureault* hearing on November 14, 1980 were not specific enough to comply with the requirements in *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), *cert. denied*, 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1969). He also argues that the identification by the victim P. should have been suppressed because an employee of the county attorney's office from the Victim/Witness Program informed P. that the defendant had confessed. The state argues that neither the photographic nor physical lineups which included defendant were unduly suggestive and that the trial court made proper rulings after the *Dessureault* hearing. We agree.

During the *Dessureault* hearing, the officers who were at the physical lineup on January 3, 1980, and who showed photographic lineups to the victims testified. They testified that the victims H., F., R., M. and B. viewed the physical lineup. In addition, a photo lineup was shown to victim R. on January 2, 1980, which included a photograph of the defendant. She positively identified the defendant in that photo spread. At the lineup, she told the officer that viewing the defendant "made her heart pound" and that she was positive of her identification. Furthermore, the officer testified that victim R. picked the defendant out in a few seconds during the photo spread and the next day her identification of him was just as positive.

Victim, B. was shown a photo spread while she was in the hospital on January 2; 1980. She immediately selected the defendant's photograph but said she would like to see him in person. Upon entering the lineup viewing room on January 3, 1980 and seeing the defendant, she became hysterical and left the room. She said she could not go back into the room, but eventually returned, positively identified the defendant and became hysterical again.

■ It appears that defendant's argument on the suggestiveness of the identification procedure regarding defendant's appearance in two lineups deals with the identifications by victims B. and R. The photo lineups shown to both those victims contained different persons than those who appeared with the defendant during his physical lineup on January 3, 1980. Defendant argues that because he was the only person who was the same in both the photographic lineups and the physical lineup there was undue suggestion in the identification procedure.

■ A two-step analysis has been applied to determine whether a defendant has been denied due process of law because of suggestive pretrial identification procedures. *State v. Chapple*, 135 Ariz. 281, 286, 660 P.2d 1208, 1213 (1983). Under the analysis, a trial court determines whether the pretrial identification procedure was unnecessarily suggestive. If the procedure is found to be unnecessarily suggestive, the court must then examine the totality of the circumstances surrounding the identification in order to determine its reliability. *Id.; State v. McCall*, 139 Ariz. 147, 677 P.2d 920 (1983), *cert. denied,* — U.S. —, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984). The question of suggestibility and reliability are factual issues and their determination is within the trial court's discretion. *State v. Kelly*, 123 Ariz. 24, 26–27, 597 P.2d 177, 179–80 (1979).

We conclude that the trial court did not abuse its discretion in holding that neither the photographic display nor the physical lineup from which the defendant was identified was unnecessarily suggestive. In this case, the trial judge noted that the absence of the same persons from the physical lineup the next day could have been suggestive, but that, in his opinion, the procedure was not impermissibly suggestive and did not give rise to a substantial likelihood of irreparable misidentification.

■ In *State v. Jones*, 110 Ariz. 546, 548, 521 P.2d 978, 980 (1974), *cert. denied*, 419 U.S. 1004, 95 S.Ct. 324, 42 L.Ed.2d 280 (1974), the court found that it was not impermissibly suggestive and did not create a substantial likelihood of misidentification when the victim knew that the defendant would be appearing in a subsequent lineup. Here, we note that it was arguably more suggestive that the victims knew that the person they had previously identified as the assailant would be appearing in the lineup. However, given the prior positive identifications by the victims and the lack of inherent suggestibility in the lineups themselves, each identification was independent and not based on an impermissibly suggestive procedure adopted by the police. There is no abuse of discretion in the trial court's ruling that the photographic display and subsequent physical lineup of the defendant were not unnecessarily suggestive.

Finally, defendant argues that the trial court erred in failing to suppress the in-

court identification by the victim, P. He argues that it should have been suppressed because an employee of the county attorney's office of Victim/Witness Programs informed P. that the defendant in this case had confessed.

After defense counsel objected to P.'s in-court identification of defendant, a hearing was held outside of the presence of the jury to determine whether her in-court identification was tainted by the suggestion. The trial judge listened to the witness testify that her identification of defendant was based on her recollection at the time of the assault and determined that an identification of defendant would be permitted. The trial judge also allowed defense counsel to cross-examine her about her conversation with the Victim/Witness employee.

█ We agree that it was certainly improper to tell P. that the defendant had confessed. However, we do not believe that that statement made her subsequent identification of defendant reversible error. *Cf. State v. Jones.* Again, applying the two-step analysis identified in *State v. Chappel* and *State v. McCall,* we believe that the trial court could have reasonably concluded that the victim's opportunity to view the defendant at the time of the crime, her degree of attention, her degree of certainty regarding the identification, the length of time between the crime and confrontation, and the accuracy of her prior description of the defendant demonstrated the reliability of her identification. *See State v. McCall,* 139 Ariz. at 154, 677 P.2d at 927 (1983). We find no abuse of discretion in the trial court's decision to allow identification of defendant by victim P.

## COMPELLED PHYSICAL LINEUP

Defendant argues that he was improperly compelled to participate in a lineup on January 3, 1980 without the presence of counsel. He argues that counsel had been appointed and that it was error to proceed with the lineup in counsel's absence.

█ Defendant argues that he was entitled to the presence of counsel at the lineup conducted on January 3, 1980, citing Rule 6.1, Arizona Rules of Criminal Procedure. Although defendant recognizes that Rule 15.2(a)(1), Arizona Rules of Criminal Procedure, requires the presence of counsel at a lineup only after the indictment or information, he argues that his right to pre-indictment, pre-information presence of counsel should be required under Rule 6.1, Arizona Rules of Criminal Procedure.

We find no violation of the defendant's right to due process as a result of the compelled lineup which occurred on January 3, 1980. We note that defendant had been arrested the day before and no information or indictment had been returned against him on any of the charges. We think the state's reliance on *State v. Perry,* 116 Ariz. 40, 567 P.2d 786 (App.1977) and *State v. Flynn,* 109 Ariz. 545, 514 P.2d 466 (1973) is justified under the facts of this case.

Defendant was placed in a lineup to be viewed by victims who had been assaulted in a manner similar to the *modus operandi* utilized by the defendant. When arrested, defendant was seen attempting to break into apartments by twisting the door knobs while using a pipe wrench. Further investigation revealed that defendant had been in an apartment occupied by two women. The detectives in this case knew that an assailant identified by a number of victims had utilized a method of introduction to his victims, all of whom resided in apartments, by telling them he was there to repair some type of utility.

█ We think the placement of defendant in the compelled lineup on January 3, 1980 was lawful and warranted under the facts of this case. In addition, we note that the police obtained a court order requiring the defendant to appear in the lineup in accordance with A.R.S. § 13–3905. We find such an order and procedure to be appropriate under *State v. Perry.*

## PROSECUTORIAL MISCONDUCT IN A RELATED LINEUP

During the pendency of defendant's case, the prosecution moved to compel his presence in a lineup involving another defendant, Gregory Taylor. The prosecution was attempting to obtain accurate identifications of Taylor in the cases in which he was alleged to be involved. Apparently, Taylor and defendant shared similar physical characteristics and the state wished to obtain identifications by victims in the Taylor case. However, during the lineup in the Taylor case, which included defendant, a witness in this case, who observed the assault on victim P., was brought into the viewing room for the purpose of determining whether she could identify defendant. Defendant's counsel, Taylor's counsel, the prosecutor, and numerous police officers were present at that lineup.

■ Defendant argues that "sneaking" the witness, McCue, into that lineup was prosecutorial misconduct and the trial court should have suppressed any testimony by McCue. Although defendant alleged that the police officer's activities in bringing the witness into the Taylor lineup constituted prosecutorial misconduct, which necessitated the imposition of sanctions under Rule 15.7, Arizona Rules of Criminal Procedure, the state argues that not only was this not misconduct, but that, in any event, no sanction was necessary. We agree.

The witness did not select defendant as P.'s assailant and, in any event, the trial court has broad discretion in the matter of sanctions. *State v. Starks*, 122 Ariz. 531, 596 P.2d 366 (1979). There has been no demonstration of prejudice to the defendant as a result of McCue's presence at that lineup and we note that the fairness of the lineup was properly protected by the presence of counsel. We find no error in the trial court's refusal to impose a sanction.

## EXPERT TESTIMONY REGARDING EYEWITNESS IDENTIFICATION

Prior to trial, the state moved *in limine* to preclude defendant's use of an expert witness to testify regarding the reliability of eyewitness identifications. The state argued that under *United States v. Amaral*, 488 F.2d 1148 (9th Cir.1973), such expert testimony should be precluded. Defense counsel argued that expert testimony should be permitted on the issue of the unreliability of eyewitness identification because the matter was not one within the ordinary experience of jurors. The state argues that the trial judge correctly applied the recent holding in *State v. Chapple*, 135 Ariz. 281, 660 P.2d 1208 (1983), and precluded the proffered expert testimony on the reliability of eyewitness identification. In his reply brief, defendant argues that the decision in *Chapple* supports his position that the trial court should have permitted expert testimony on the reliability of eyewitness testimony and the court, therefore, abused its discretion in granting the state's motion *in limine*.

■ In *Chapple*, the court adopted the four criteria used by the court in *United States v. Amaral*, to determine when a trial court should consider admitting expert testimony on the issue of the reliability of eyewitness identification. *Chapple*, 135 Ariz. at 291, 660 P.2d at 1218. Those criteria to be considered are: (1) a qualified expert; (2) a proper subject; (3) conformity to a generally accepted explanatory theory; and, (4) probative value compared to the prejudicial effect. 488 F.2d at 1153. In determining whether the use of an expert in *Chapple* was a proper subject for expert testimony, the court reviewed a number of factors that were considered important.

The court stated that in making a determination as to whether the testimony would assist the jury to resolve the issues raised by the facts, it was important to consider the ultimate facts raised by the party offering the evidence, which were supported by evidentiary facts in the record. 135 Ariz. at 295, 660 P.2d at 1222. The court found that the record demonstrated that the expert's testimony would have been of considerable assistance in resolving the factual contentions raised by the parties in the *Chapple* case. The court

stated that while it had no problem with the general rule that the trier of fact needs no assistance from experts on the question of reliability of identification, "the unusual facts of this case compel the contrary conclusion." 135 Ariz. at 296, 660 P.2d at 1223.

In *Chapple*, we think it was important to the court's decision that identification was the sole issue in the case. The defendant had seven witnesses who placed him in another state at the time of the offense and no direct or circumstantial evidence of any kind connected him to the crime other than testimony by Scott and Buck. 135 Ariz. at 285, 660 P.2d at 1212. The defendant was apprehended and tried only because of identifications by two persons which occurred over a year after the crime. *Id.* In addition, the court found that there was a serious question regarding the accuracy of the identification because: it occurred over a year after the crime; after-acquired information phenomena played a part in the witness's identification; and, the witness's identification may have been influenced by "an unconscious transfer of memory." 135 Ariz. at 295, 660 P.2d at 1222.

■ We believe this to be the "usual case" referred to by the court in *Chapple* in which the trial court's discretionary ruling on the admissibility of expert testimony on eyewitness identification will be upheld. 135 Ariz. at 297, 660 P.2d at 1224. In this case, the identifications occurred shortly after the sexual assaults, the identifications were positive, there was no alibi defense alleged, and, in fact, defendant had made lengthy incriminating statements regarding his involvement in each offense. We hold that the trial court did not abuse its discretion in refusing to allow expert testimony on the issue of identification.

### DENIAL OF MOTION FOR NEW FINDING OF PROBABLE CAUSE

■ Defendant argues that the trial court erred in denying his motion for a new finding of probable cause which was based upon *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977). (*See*

*State v. Acosta,* 125 Ariz. 146, 608 P.2d 83 (App.1980)). We need not consider this issue because a trial court's denial of a motion to remand for a new finding of probable cause must be challenged by special action or not at all. *Maule v. Superior Court,* 142 Ariz. 512, 690 P.2d 813 (App. 1984); *State v. Neese,* 126 Ariz. 499, 616 P.2d 959 (App.1980).

### DENIAL OF NEUROLOGICAL EXAMINATION

Defendant argues that the trial judge erred in denying his motion for neurological examination and that it deprived him of an opportunity to present favorable evidence on his behalf. The state argues that defendant has failed to set forth on appeal, as well as in the trial court, sufficient facts or legal authority to support his position that he was entitled to a neurological examination.

■ Although a court must order a mental examination pursuant to Rules 11.1 and 11.3, Arizona Rules of Criminal Procedure, to determine if a defendant understands the proceedings or can assist in his defense if reasonable grounds for such an examination exists, *State v. Ortiz,* 117 Ariz. 264, 266, 571 P.2d 1060, 1062 (1977), the trial court has broad discretion in determining whether reasonable grounds do exist. *Id.* During the oral argument on his motion, April 18, 1980, it was clear that defense counsel was arguing, as he phrased it, the broader question of his client's physical health. He indicated that his client was suffering from severe headaches, dizziness, periods of blackouts and that it would be advisable for the court to require a neurological examination. The prosecutor pointed out that the defendant had recently been examined by two physicians, neither of whom recommended a neurological examination. Defense counsel also advised the court that his client had been suffering from chest pains, had gone to the jail infirmary and had received no help from the doctors.

The trial court concluded that unless there was some reason to believe that defendant was not competent to stand trial or to understand the nature of the charges and to assist counsel, he would deny the request for treatment. Counsel did not urge that another Rule 11 examination should be conducted, but rather that the court had inherent power to require treatment for a client who was suffering from the stated physical complaints. The court denied the motion without prejudice to defendant, in order to allow reurging the motion in the event defendant was not receiving proper medical treatment at the county jail. No further request was made.

The trial court did not abuse its discretion in denying a motion for neurological examination which was not grounded upon a claim that defendant was unable to understand the nature of the charges against him or to assist counsel in his defense. *State v. Ohta*, 114 Ariz. 489, 562 P.2d 369 (1977).

## MOTION TO SUPPRESS EVIDENCE

Defendant argues that the evidence seized pursuant to a search warrant issued for his residence should have been suppressed. He argues that the affidavit in support of the search warrant provided no basis upon which the magistrate could believe: (1) the address given was in fact the defendant's, and (2) that the items sought would be at his residence. The state argues that the warrant and affidavit read in a common sense manner adequately provided a substantial basis for the magistrate to find that it was the defendant's residence and that the items sought would be found at his residence.

Affidavits are to be interpreted in a common sense and realistic manner. *State v. Summerlin*, 138 Ariz. 426, 675 P.2d 686 (1983), *quoting United States v. Lucarz*, 430 F.2d 1051, 1055 (9th Cir.1970). We find that the magistrate in this case could have determined from the affidavit that the defendant had been identified by one of the sexual assault victims, that certain clothing and other items had been iden-

tified and that the place to be searched was the residence of the defendant in which the specifically described clothing and other items would likely be found. We hold there was a "substantial basis" for the magistrate's finding of probable cause. His determination will be upheld. *See, State v. Kelly*, 111 Ariz. 181, 186, 526 P.2d 720, 725 (1974), *cert. denied*, 420 U.S. 935, 95 S.Ct. 1143, 43 L.Ed.2d 411 (1975); *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

The magistrate could have inferred, because of the nature of the items sought and the short period of time after which the crimes had been committed, that they would be in the defendant's residence. *See also, United States v. Lucarz*, 430 F.2d at 1055 (a magistrate may rely on normal inferences as to where a criminal would be likely to hide evidence). In addition, we believe a common sense reading of the affidavit and warrant provided "substantial evidence" for the magistrate's determination that the items sought were at the defendant's residence, which was listed on the face of the warrant. The officer's sworn statement regarding the defendant's address could have been considered truthful and substantial under the facts of this case. *See People v. Superior Court*, 49 Cal.App.3d 160, 122 Cal.Rptr. 459 (1975), *cf., Illinois v. Gates*.

The trial court did not err when it denied defendant's motion to suppress. *State v. Hicks*, 133 Ariz. 64, 73, 649 P.2d 267, 276 (1982).

## ADMISSION OF VICTIM'S PHOTOGRAPH

Defendant argues that the admission of a photograph of the victim F. served no proper purpose except to inflame the jurors to a point where they could not render a fair and objective verdict. The only authority cited in support of his position is Rule 403, Arizona Rules of Evidence. The state argues that the photograph was not inflammatory or gruesome and that the trial

judge did not abuse his discretion in admitting the exhibit. We agree.

■■■ The trial court has broad discretion in admitting or excluding arguably gruesome photographs. *State v. Vickers*, 129 Ariz. 506, 633 P.2d 315 (1981). In this case, the exhibit was neither gruesome nor so inflammatory as to prejudice the average person. In addition, the exhibit would have been relevant in supporting the victim's testimony and, consequently, her credibility. Therefore, we find the trial court did not abuse its discretion in admitting the photograph of victim F. *State v. McCall*, (evidence which substantiates the credibility of prosecuting witnesses is relevant).

## MOTION TO SEVER

Defendant argues that the offenses alleged in the indictment were joined only by virtue of Rule 13.3(a)(1), Arizona Rules of Criminal Procedure and, therefore, he was entitled to a severance of the counts under Rule 13.4(b), Arizona Rules of Criminal Procedure. He argues that even though the prosecutor argued that the matters were joined on the basis of a common scheme or design, that a review of the evidence demonstrates that the factors common to all victims were minimal.

■■■ A trial court possesses broad discretion in the area of joinder and severance. *State v. Perez*, 141 Ariz. 459, 462, 687 P.2d 1214, 1217 (1984); *State v. Roper*, 140 Ariz. 459, 461, 682 P.2d 464, 466 (App. 1984). In order for two crimes to be classified as a common scheme or plan under Rule 13.3(a)(3), Arizona Rules of Criminal Procedure, it is not necessary that the crimes be perpetrated in an absolutely identical manner, so long as the court perceives a sufficient similarity between the crimes to make it probable they were committed by the same person. *State v. Perez; State v. Roper.* Furthermore, a defendant must demonstrate a clear abuse of discretion with respect to the trial court's decision to join the offenses, based on a showing at the time the motion was made and not what ultimately transpired at trial. *State v. Roper, citing State v. Dale*, 113 Ariz. 212, 550 P.2d 83 (1976).

■ During the argument on the motion to sever, May 30, 1980, the following factors were related to the trial court: (1) all six victims were assaulted within approximately a five-week period; (2) all incidents occurred in either Mesa or Tempe within eight miles of the defendant's residence; (3) all of the victims were young, white females; (4) all of the sexual assaults occurred at or very near apartments in which the victims lived; (5) most of the assaults involved weapons, and in *all* of them threats were made; (6) in all of the sexual assaults, the defendant at some point accomplished either anal or vaginal intercourse with the victims from behind; (7) something of value was either taken or threatened to be taken in each instance. The evidence presented to the trial court indicated that similar type victims, living in similar type residences, were sexually assaulted in similar acts by the defendant. Under the tests set forth in *State v. Tipton*, 119 Ariz. 386, 581 P.2d 231 (1978), there were substantial similarities between the offenses and the trial judge did not abuse his discretion in denying the defendant's motion to sever.

## DENIAL OF MOTION TO SUPPRESS STATEMENTS

The defendant argues that the trial court erred in refusing to suppress statements made by him after his arrest on January 2, 1980. Defendant made oral statements to Officer Albert Moreno, Jr. at the Mesa Police Station. Defendant orally and in writing made statements to Officer Michael Hayes at the station on the morning of January 3rd. Thereafter, in the afternoon of January 3rd defendant was presented for his initial appearance on the sexual assault of victim R.[1] The court appointed

---

1. Defendant was also charged at that time with the attempted burglary which precipitated his arrest on January 2, 1980. We are not concerned, however, with the attempted burglary

the public defender's office to represent defendant. On January 4th defendant made oral statements to several officers during a ride-around. Although the brief is unclear, it appears that defendant is arguing that all of the statements should have been suppressed. Defendant makes several conclusory statements in his brief: (1) that once a defendant has counsel he cannot waive his right to counsel without the presence of counsel; (2) that the record is crystal clear that at some point the defendant invoked his right not to incriminate himself by indicating he did not wish to proceed in the ride-around; (3) that the statements obtained during the ride-around were otherwise involuntary because of the circumstances preceding the ride-around. He also states: "it seems inexcusable that his attorney was not contacted prior to either the taking of statements or the obtaining of evidence during the drive to various crime scenes."

In reviewing a decision on a motion to suppress we view the facts in the light most favorable to sustaining the lower court's ruling. *State v. Gerlaugh*, 134 Ariz. 164, 654 P.2d 800 (1982). It is the duty of the trial court to resolve any conflicts in evidence and where the findings of the trial court are supported by adequate evidence this court will affirm. *State v. Rhymes*, 129 Ariz. 56, 628 P.2d 939 (1981). Absent clear and manifest error in the denial of the motion to suppress this court will not disturb the lower court's ruling. *State v. Hicks.*

█ We find no error in admission of defendant's statements, oral and written, given on January 2nd and 3rd. Officer Moreno advised defendant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), at the scene of arrest and again at the station, just prior to defendant's oral statements. Defendant acknowledged in writing at the station that he understood and would voluntarily answer Officer Moreno's ques-

tions. The officer testified at the suppression hearing that no threats or promises of any kind were made to force or induce defendant's statements. Although confessions are prima facie involuntary, where, as here, the totality of the circumstances reasonably supports the conclusion that the statements were voluntary, suppression is not required. *See State v. Hensley*, 137 Ariz. 80, 669 P.2d 58 (1983); *State v. Arnett*, 119 Ariz. 38, 579 P.2d 542 (1978). The record amply supports the conclusion that defendant voluntarily submitted to lawful custodial interrogation by Officer Moreno on January 2, 1980.

█ We next consider the validity of defendant's January 3rd oral and written statements to Officer Hays. Prior to any questioning of defendant the officer reinformed defendant of his *Miranda* rights. Defendant acknowledged in writing that he understood these rights and would voluntarily answer Officer Hays' questions. Defendant on each page of his written statement reaffirmed that he read his *Miranda* rights, understood them, and voluntarily made the statement contained therein. The officer testified at the suppression hearing that no threats or promises were used to force or induce defendant to make the January 3rd statements. The record supports the lower court's finding that defendant knowingly, intelligently and voluntarily waived his rights in making these statements.

█ The statements made during the ride-around involve not only *Miranda* and voluntariness issues, but concern defendant's right to counsel. In *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the United States Supreme Court held:

We hold that the petitioner was denied the basic protections of that guarantee [of the Sixth Amendment] when there was used against him at his trial evidence of his own incriminating words,

charge, except as evidence concerning the events of January 2nd were used to prove de-

fendant's guilt in the crimes here on appeal.

which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel. *Id.* at 206, 84 S.Ct. at 1203, 12 L.Ed.2d at 250. *See also United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). The constitutional right to counsel entitles an accused "to the help of a lawyer at or after the time that judicial proceedings have been initiated against him—'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424, 436, *reh. denied,* 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 240 (1977), *quoting, Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411, 417 (1972).

■ The record is clear that as to all charges stemming from incidents relating to victim R., defendant's Sixth Amendment right to counsel attached at the January 3rd initial appearance. The court at the initial appearance appointed the public defender's office to represent defendant. The proscriptions of *Massiah* do not apply, however, to information elicited concerning only crimes for which an accused has not been indicted. *State v. Ortiz,* 131 Ariz. 195, 639 P.2d 1020 (1981) *cert. denied,* 456 U.S. 984, 102 S.Ct. 2259, 72 L.Ed.2d 863 (1982); *State v. Tucker,* 118 Ariz. 76, 574 P.2d 1295 (1978) (Gordon J., dissenting), *cert. denied,* 439 U.S. 846, 99 S.Ct. 144, 58 L.Ed.2d 147 (1978).

In *State v. Ortiz* our supreme court held that:

> The issue before us, then, is whether a Sixth Amendment violation occurs when a police agent surreptitiously elicits information from an indicted defendant if the information concerns an unindicted charge but is used to prove the indicted charge. We hold that under *Massiah* and *Henry,* there is a Sixth Amendment violation when this situation occurs.

131 Ariz. at 201–02, 639 P.2d at 1026–27 (footnote omitted). In *Ortiz* the state had

used statements by the accused relating to a conspiracy to murder potential witnesses in the underlying charged crime of murder, for which counsel had been appointed. The statements concerning solely the conspiracy were admitted and used at trial on the murder charge to show consciousness of guilt. The court held that the statements should not have been admitted.[2]

■ In the instant case the state used defendant's statements made in the ride-around to help prove its case against defendant in the counts involving victim R. The state went to trial on the theory that all of the sexual assaults were part of a common scheme or plan. Defendant's motion to sever counts had been denied. Thus, as in *Ortiz,* there is a potential Sixth Amendment violation. The questioning during the ride-around was likely to elicit incriminating information. *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); *Robinson v. Percy,* 738 F.2d 214 (7th Cir.1984).

The state argues that there is no constitutional infirmity since, unlike in *Brewer,* the defendant here did not request to see an attorney and that defendant waived his constitutional rights. The state's first argument is without merit. This is not simply a custodial interrogation situation which requires the giving of *Miranda* warnings. Were *Miranda* the sole controlling law we would agree that a request for an attorney is a necessary prerequisite to trigger the protections of the law. *See Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (assertion of right to counsel requires interrogation cease until attorney is present).

■ We deal here with the blanket Sixth Amendment right to counsel after initiation of criminal proceedings. The defendant need not at every, or any, step assert his right to counsel, for that right is guaranteed by the constitution. *Brewer v. Williams.* It is incumbent upon the state

---

**2.** The court in *Ortiz* found the admission of the statements as harmless beyond a reasonable doubt.

to prove either a valid affirmative waiver of the accused's known right to counsel or to elicit statements from an accused only when counsel is present. *See United States v. Henry; Brewer v. Williams; Massiah v. United States.* There is no question that the officers involved in the ride-around knew that counsel had been appointed for the defendant. The officers made no effort to contact counsel prior to questioning. Thus, absent a waiver, the state may not use any statements deliberately elicited from the defendant on the ride-around.

Officer Nelson testified at the voluntariness/suppression hearing as follows:

Q  Did you have any discussion with Mr. Rodriquez before he got in the car?

A  Yes, I did.

Q  What did you discuss with him?

A  I asked him if he understood what his rights were.

Q  What did he say?

A  He said yes, he did.

And I also asked him if he was willing to voluntarily do this, show us these locations, which he indicated he was.

Q  And did you ask any other officer if he had been given his rights?

A  Yes, I did.

Q  Who did you ask?

A  Detective Hays.

Q  What was his response?

A  He indicated that he had been advised of his rights.

Q  You did not formally ask Mr. Rodriguez each right as indicated in—by the decision of Miranda versus Arizona?

A  No, I didn't specifically quote Miranda.

Q  You asked him if he understood his rights?

A  I asked him if he understood his rights as they were explained to him.

Q  His response to that was—

A  That he did understand them.

Q  Did he indicate that he would willingly and voluntarily go on the ride?

A  Yes.

The other officers involved in the ride-around testified that they did not repeat any of the *Miranda* warnings or specifically inquire of defendant about his waiver of counsel on January 4th.

▉▉▉▉▉▉ It is incumbent on the state to prove an intentional relinquishment or abandonment of a known right. *Brewer v. Williams; State v. Jones,* 119 Ariz. 555, 582 P.2d 645 (App.1978). Courts indulge in every reasonable presumption against waiver. *State ex rel. LaSota v. Corcoran,* 119 Ariz. 573, 583 P.2d 229 (1978). To determine whether a valid waiver has occurred courts look to the totality of the circumstances. *State v. James,* 141 Ariz. 141, 685 P.2d 1293 (1984). A waiver will not be found merely because the accused proceeded to answer questions from police officers, *State ex rel. LaSota v. Corcoran,* but must be an affirmative manifestation of a voluntary waiver of a known right. *Brewer v. Williams.*

The lower court made the following findings with regard to the motion to suppress.

The Court finds Miranda warnings were given and understood and that the statements made by the defendant on January 2, 3 and 4, 1980, were freely and voluntarily given.

There is no express finding as to the waiver of counsel issue discussed here, although implicit from the admission of the testimony at trial is a determination adverse to the defendant.

Under the totality of circumstances— which include the facts that defendant attempted suicide by hanging the night of January 3–4, 1980; that defendant had not had an opportunity to talk with his appointed counsel; that defendant was not specifically reinformed of his right to counsel; and that there is no statement in the record that defendant realized he was entitled to assistance of counsel during questioning and the ride-around—we must question whether there was sufficient evidence to find a knowing and intelligent waiver of the right to counsel. *Robinson v. Percy.*

The United States Supreme Court has not articulated any specific guidelines for

determining waiver of the Sixth Amendment right to counsel. The U.S. Circuit Courts of Appeal do not follow one standard test for waiver. *See generally*, Note, Proposed Requirements for Waiver of the Sixth Amendment Right to Counsel, 82 Col. L.Rev. 363 (1982); Note, Sixth Amendment Right to Counsel: Standards for Knowing and Intelligent Pretrial Waivers, 60 B.U.L. Rev. 738 (1980). Several circuits hold that provisions of *Miranda* warnings [3] are sufficient to establish a valid pretrial waiver. *E.g., Blasingame v. Estelle*, 604 F.2d 893 (5th Cir.1979); *United States v. Monti*, 557 F.2d 899 (1st Cir.1977); *Moore v. Wolff*, 495 F.2d 35 (8th Cir.1974); *United States v. Cobbs*, 481 F.2d 196 (3d Cir.), *cert. denied*, 414 U.S. 980, 94 S.Ct. 298, 38 L.Ed.2d 224 (1973). The Second Circuit holds that a "higher standard" governs pretrial waiver of Sixth Amendment rights, and *Miranda* warnings alone do not establish a knowing and intelligent waiver. The Seventh Circuit declines to impose a rigid test for determining when an accused validly has waived his Sixth Amendment right to counsel, relying on the individual circumstances of each case. *Robinson v. Percy; United States v. Mohabir*, 624 F.2d 1140 (2d Cir. 1980). The Ninth Circuit follows the line of authority which holds that when an accused clearly, knowingly and intelligently waives his right in accordance with *Miranda* that is sufficient evidence of a waiver of his Sixth Amendment rights. *Coughlan v. United States*, 391 F.2d 371 (9th Cir.), *cert. denied*, 393 U.S. 870, 89 S.Ct. 159, 21 L.Ed.2d 139 (1968).

*Coughlan* is a California case similar to the one at issue. Coughlan was convicted of aiding and abetting in a bank robbery. Coughlan's conviction depended on his oral confession. While in custody the officers advised him of his rights, however, he did not sign a waiver. The officers who conducted the interrogation knew that he was represented by court-appointed counsel, however, they did not inform his attorney about the interrogation.

The district court found that Coughlan was fully and fairly advised of his constitutional rights, and that he waived those rights. The Ninth Circuit Court of Appeals affirmed the decision to admit the confession and held that although the police knew the defendant was represented by counsel, they did not have to inform the attorney about the interrogation since the defendant waived his right to have counsel present. The court, in rejecting Coughlan's theory that a waiver is not knowing and voluntary unless counsel is present to advise the client, stated:

> It may well be that the day is approaching when the right to. counsel may be expanded to the point where an accused may only be interrogated by the police in the presence of his lawyer. However, no persuasive precedent for the holding here sought has come to our attention.... *Miranda* specifically recognizes prior cases holding that the right to counsel may be waived. Here a clear and knowing waiver was shown. We are unwilling to attempt to expand the *Miranda* ruling to the extent sought by appellant.

391 F.2d at 372 (footnote omitted). The court refused to expand the method of waiving Sixth Amendment rights. Therefore if Rodriquez knowingly and intelligently waived his rights pursuant to *Miranda*, we hold it was sufficient to waive his Sixth Amendment right to counsel. In determining the voluntariness of the confession, the court looks to the totality of the circumstances involved, *State v. Hall*, 120 Ariz. 454, 586 P.2d 1266 (1978) and the court may consider the defendant's knowledge of the criminal justice system. *State v. Jones*, 119 Ariz. 555, 582 P.2d 645 (1978). Having considered the totality of circumstances we affirm the trial court's ruling that Rodriquez' waiver was knowing and intelligent. The statements were properly admitted.

In this case, two detectives testified that defendant was very experienced in the criminal justice system, indicating a sophis-

---

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ticated knowledge of the strength of the state's case against him on the day that he was arrested. In addition, the detectives testified that it was apparent to them during conversations with the defendant that he had experience in the criminal justice system. In fact, subsequent to the defendant's initial statements to the detective at the time of his arrest, the detective asked him if he wasn't, in fact, an ex-convict, which he was.

■ A law enforcement officer is under no constitutional duty to contact a defendant's attorney after defendant has waived his right to counsel. *State v. Marks*, 113 Ariz. 71, 546 P.2d 807 (1976). A defendant may waive his right to have appointed counsel present during police questioning. *State v. Richmond*, 23 Ariz. App. 342, 533 P.2d 553 (1975). The determination of a defendant's waiver of counsel or right to remain silent depends upon the particular facts and circumstances surrounding each case, including the background, experience and conduct of the accused. *United States v. Skinner*, 667 F.2d 1306 (9th Cir.1982), *cert. denied*, 463 U.S. 1229, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983); *State v. Loyd*, 126 Ariz. 364, 616 P.2d 39 (1980).

■ The act of the magistrate finding defendant indigent and appointing the public defender's office was not tantamount to an assertion of the right to the assistance of counsel by the defendant preventing subsequent interrogation by the police. *See State v. Jackson*, 60 Or.App. 681, 655 P.2d 592 (1982). The defendant in this case never refused to answer any questions or demanded to speak to an attorney. He at all times cooperated with the police in the investigation. He did not assert, even after being warned on three separate occasions of his rights under *Miranda*, his right to have counsel present during questioning. The appointment of counsel at the initial appearance was not a request for the assistance of counsel during subsequent questioning. *State v. Jackson*, 60 Or.App. at 687, 655 P.2d at 596 (1982). *See also State v. McLucas*, 172 Conn. 542, 375 A.2d

1014 (1977), *cert. denied*, 434 U.S. 855, 98 S.Ct. 174, 54 L.Ed.2d 126 (1977); *Berryhill v. Ricketts*, 242 Ga. 447, 448–49, 249 S.E.2d 197, 199 (1978), *cert. denied*, 441 U.S. 967, 99 S.Ct. 2418, 60 L.Ed.2d 1073 (1979) (if a defendant gives a statement after being informed of the appointed attorney's existence, the statements will be admissible because of the waiver); *People v. Cozzi*, 93 Ill.App.3d 94, 48 Ill.Dec. 670, 416 N.E.2d 1192 (1981) (when a defendant understands his rights and chooses to speak, not requesting his lawyer, such action evidences a knowledge of rights and a choice not to utilize them); *People v. Robinson*, 87 Ill. App.3d 621, 627, 48 Ill.Dec. 121, 125, 410 N.E.2d 121, 125 (1980) (where a police officer interviewed the defendant after the public defender had been appointed, the court found that the defendant could waive his right to the presence of counsel).

Under all of the circumstances of this case, including the repeated readings of the *Miranda* rights, defendant's experience in the criminal justice system, his awareness of the appointment of counsel, and his professed interest in cooperating with the police which continued from January 3rd to January 4th during the ride-around, we hold that the trial court did not commit clear and manifest error in determining that the motion to suppress statements should be denied.

### REFUSAL OF DEFENSE INSTRUCTION NO. 3

Defendant argues that the trial court erred when it refused defense instruction No. 3. That instruction read:

> You are not to be swayed by the fact that there may be a larger number of witnesses on one side of the case than on the other.

■ It is not error for a court to refuse instructions which are incorrect, covered by others, or are simply not applicable. *State v. Lambright*, 138 Ariz. 63, 673 P.2d 1 (1983). We note that the trial judge properly instructed the jurors on their duty to judge the credibility of each

witness who testified. In addition, we think that the instruction may have been misleading to the extent that it may have suggested to the jurors that they should not weigh all of the evidence presented by the state in determining that it had carried its burden of proving the defendant guilty beyond a reasonable doubt. In any event, we note that the issue was properly covered by the trial court's instructions and we find no error.

## AGGRAVATED SENTENCE

■ Defendant argues that the trial court erred when it considered the use of a weapon by defendant in the various counts as an aggravating circumstance when the use of the weapon had already been utilized to make the offense a "dangerous" offense. He argues that such use of the weapon for both purposes constituted double punishment. A similar argument was raised and rejected in *State v. Bly*, 127 Ariz. 370, 621 P.2d 279 (1980). That case is controlling and the argument raised by defendant is without merit.

## PROSECUTOR'S CLOSING ARGUMENT

Defendant argues that during the closing argument, the prosecutor indicated that defendant was the guilty one and that justice and conviction were one in the same. He argues that such remarks were misconduct and went to the foundation of the case and took from him the presumption of innocence.

■ We note that defendant failed to object to the remarks when made and such failure constitutes a waiver unless the comment constituted fundamental error. *State v. Thomas*, 130 Ariz. 432, 636 P.2d 1214 (1981). In reviewing the entire argument by counsel, we find that the comment did not constitute fundamental error and therefore objection to the comment has been waived.

The judgments of conviction and sentences imposed are affirmed.

CORCORAN and FROEB, JJ., concur.