582 P.2d 645

The STATE of Arizona, Appellee,

v.

Jack Neil JONES, Appellant.

No. 2 CA–CR 1228.

Court of Appeals of Arizona,
Division 2.

May 3, 1978.
Rehearing Denied June 6, 1978.
Review Denied July 18, 1978.

John A. LaSota, Jr., Atty. Gen. by Philip G. Urry, Asst. Atty. Gen., Tucson, for appellee.

John M. Neis, Pima County Public Defender by James E. Sherman, Asst. Public Defender, Tucson, for appellant.

## OPINION

HOWARD, Judge.

On September 2, 1976, Barbara Blakely's van was stolen from a parking lot. Ten days later appellant was stopped for a traffic violation while driving the van in Phoenix, Arizona. A registration check was run on the vehicle which led to appellant's arrest. After appellant was advised of his rights at the scene, he refused to answer any questions because he had ". . . fallen for it before . . ." and he requested an attorney. The arresting officer failed to honor appellant's invocation of his rights and confronted appellant with a purse which he found in the van. This purse contained identification showing its owner to be Barbara Blakely. Appellant told the officer that the purse belonged to his girlfriend.

Appellant was taken to the police station. On the way upstairs to the detective section he volunteered that he expected to do a lot of time in prison. He was taken to a Sgt. Bender. Bender ran a records check on appellant with revealed an extensive criminal record. He began questioning appellant about this record and a conversation ensued between them concerning it. The arresting officer later joined in this conversation during which appellant volunteered information about the present offense which led Bender to inquire of the arresting officer whether appellant had been informed of his rights. Bender was told that appellant had been informed and declined to make any statement. Bender then told appellant he need not continue the conversation but appellant said he did not care and went on to make statements concerning his possession of the van.

Appellant was kept in custody for four days and then released, no charges having been filed. On October 5, 1976, appellant was arrested in California on a fugitive warrant for the theft of the van. Extradition proceedings culminated in his return to Arizona on February 1, 1977. His initial appearance was on February 2, 1977, at which time the public defender was appointed to represent him. On February 9, 1977, Det. Spivey, who was on that day scheduled to appear before the grand jury, went to see appellant at the Pima County Jail. Prior to going there, the officer had read the report made by the Phoenix police.

Spivey introduced himself to appellant. He told appellant that he wanted to get acquainted with him a little bit because he had to make a grand jury appearance and, never having had the occasion to meet him, wanted to be able to associate the name with the face. Spivey told him he wanted to "rap" with him for a while and find out where he came from. Spivey and appellant talked about his background, his ex-wife and children and future sociological counseling. They also talked about his past record and his drinking problem. Spivey then advised appellant of his *"Miranda"* rights. After appellant indicated that he understood those rights, Spivey told him that the questions he asked him and any answers appellant gave would be presented to the grand jury and also that the information given by appellant would be used in any subsequent court proceeding. Appellant asked Spivey the purpose of the grand jury and was told that it would decide whether or not he should stand trial for his involvement in this incident. Spivey also

told him that the only information he had available was what he had read in the police report and that he would like a more balanced version of what had happened. Appellant then gave him his version of the incident which was presented by Spivey to the grand jury and later introduced into evidence, over objection, at the trial.

The trial court granted appellant's motion to suppress all statements made to the police in Phoenix, except for the statement about going to prison. Appellant contends that the court erred in not suppressing his statements to Spivey for two reasons: (1) He should not have been interrogated without the presence of his court-appointed counsel, and (2) the *"Miranda"* warnings and his waiver of rights thereunder should have taken place prior to the commencement of any conversation.

The law is quite clear in Arizona that a confession is not made involuntary by the mere fact that it was made outside the presence of the defendant's attorney. *State ex rel. Berger v. Superior Court,* 105 Ariz. 553, 468 P.2d 580 (1970); *State v. Richmond,* 23 Ariz.App. 342, 533 P.2d 553 (1975).[1] While in these latter two cases the defendant was the one who initiated the contact with the officers who took his statement, such distinction does not change the rule, which has been applied by the Ninth Circuit in cases where the initial contact was made by the law enforcement officers instead of the defendant. See, *United States v. Zamora-Yescas,* 460 F.2d 1272 (9th Cir. 1972); *Coughlan v. United States,* 391 F.2d 371 (9th Cir. 1968). We are therefore left with the question of whether the technique employed by Spivey complied with the requirements of *"Miranda"*.

In order to admit into evidence appellant's statement to Spivey, it was incumbent upon the state to show that it was the result of an intentional relinquishment or abandonment of a known right or privilege. *Brewer v. Williams,* supra; *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Citing the case of *People v. Honeycutt,* 20 Cal.3d 150, 141 Cal. Rptr. 698, 570 P.2d 1050 (1977), appellant contends that failure to read him his *"Miranda"* rights and secure a waiver thereof prior to speaking to him in the first instance, rendered his statements to Spivey inadmissible. The state contends that as long as appellant made no incriminating or exculpatory statements prior to the time the warning was given, *"Miranda"* was not violated and the waiver of his rights satisfied federal constitutional requirements.

In *Honeycutt,* the California Supreme Court noted that *"Miranda"* nowhere expressly disapproves the conversation-warning-interrogation sequence. It then condemned that procedure and held that the statement made by the defendant was inadmissible. However, the facts in *Honeycutt* are significantly different.

In *Honeycutt* the police secured a decision from the defendant to talk about the crime at the end of the conversation phase and *prior* to giving him his *"Miranda"* warnings. That did not happen here. We must therefore focus upon appellant's alleged waiver. If it were satisfactorily shown to the trial court that his waiver was the result of the failure to give the *"Miranda"* warning at the inception of the conversation, then appellant would present a different situation for us to consider. At the motion to suppress, appellant did not claim that the friendly conversation engaged in prior to the *"Miranda"* warnings induced him to make the statement to Spivey. Instead, he claimed that he thought the grand jury was going to decide whether he was guilty or not and he therefore felt compelled to give the statement in spite of the fact that, as he admitted, Spivey told him the purpose of the grand jury was to decide whether or not he would go to trial. In view of his extensive criminal record, of which the trial court was aware, we do not believe the court erred in concluding that appellant effectively waived his rights.

Appellant next claims the trial court erred in overruling his objection to a

1. See also, *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

question posed by the prosecution to Officer Gaines, who arrested him in Phoenix, and in allowing Gaines to answer. In order to understand why the complained-of question was asked of Gaines, reference must first be made to appellant's version of the incident which was related to the jury through Spivey. Appellant told Spivey that on the night prior to taking the Blakely van he was at a tavern in Tucson where he met three men whom he had known since 1968. There had been a previous problem between these three men and appellant relative to some mechanics tools that were missing. The three men escorted him from the bar at gun point. One of the three men kept repeating, "Take him out and kill him. I don't want to see him again." He was taken from the bar to the home of one of the three men and when the man's wife became aware of what had happened, she talked her husband into returning appellant to the bar. He was taken back to the bar with the understanding that he would get out of town. The following day, in the early afternoon, appellant saw Barbara Blakely's van with the keys in the ignition. He took the van and left town with no intention of every returning. Appellant did not supply Officer Spivey with the names of the three men who allegedly abducted him from the bar and threatened his life.

In appellant's opening statement to the jury and his cross-examination of Spivey, it was evident that his defense theory was duress. In order to counter this, the state questioned Officer Gaines as follows:

"Q. Officer Gaines, I believe the last question I asked you in the jury's presence was whether Mr. Jones had occasion to make a statement to you upon your arrival. And I believe you indicated in the elevator in the police station, is that correct?

A. Yes, sir.

Q. Can you tell me what Mr. Jones might have said at that time?

A. Yes. He stated that he believed he would be spending some time in prison.

Q. Officer Gaines, did Mr. Jones at that point in time or any other point in time say he had taken that van under some sort of duress?

A. No, sir." (Emphasis added)

It is fundamental error to introduce testimony that a criminal defendant elected to remain silent when he had a constitutional right to do so. *State v. Anderson,* 110 Ariz. 238, 517 P.2d 508 (1973); *State v. Landrum,* 25 Ariz.App. 446, 544 P.2d 270 (1975). Assuming arguendo that error occurred here, we find it harmless beyond a reasonable doubt. *State v. Anderson,* supra. The evidence in this case was overwhelming. Appellant admitted to Spivey that he had taken the van and that when he took it he never intended to return to Tucson. In order to constitute a defense to a criminal charge other than the taking of the life of an innocent person, the coercion or duress must be present, imminent and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. See cases in Annot., 40 A.L.R.2d 908, 910, et seq. The facts here did not present a duress defense.

■ The last error which appellant urges concerns the sentence. On the date of the sentencing, August 11, 1977, the trial court stated:

"IT IS THE FURTHER JUDGMENT AND SENTENCE OF THE COURT, having considered time served and giving credit therefor, that Deft. be incarcerated in the Arizona State Prison for a term of not less than four (4) years nor more than five (5) years, commencing October 5, 1976.

IT IS FURTHER ORDERED that any additional time to be served be served consecutively to time to be served in accordance with the sentence in A–31984."

The sentence imposed upon appellant in cause number A–31984, a prior conviction, was four to five years in the Arizona State Prison commencing October 5, 1976.

On September 2, 1977, the trial court entered the following "clarification of order" nunc pro tunc August 11, 1977:

"It is the intent of the Court to give the Deft. credit for time served from October 5, 1976, to August 11, 1977.

It was the further order of the Court that any additional time to be served on the sentence in Cause No. A–31983 be served after the completion of time served in Cause No. A–31984 and that the balance of any time to be served under A–31983 shall be served after and consecutively to the time served in A–31984."

Appellant and the state agree that the bifurcated sentence imposed by the trial court is illegal and that the attempt at clarification served to further confuse the issue. It would appear that the trial court intended to have the sentence in this case run consecutively to the sentence in cause number A–31984 and also intended that appellant have credit on the sentence here for the time spent in the county jail. This can be corrected by the trial court on resentencing.

The judgment of guilt is affirmed; the sentence is vacated and the case is remanded for resentencing.

RICHMOND, C. J., and HATHAWAY, J., concur.