799 P.2d 844

**STATE of Arizona, Appellee,**

v.

**Jimmy N. KINSLOW, aka James N. Coscoe, Appellant.**

**No. CR–88–0134–AP.**

Supreme Court of Arizona, En Banc.

Oct. 9, 1990.

**504**

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Crim. Div., Bruce M. Ferg, Asst. Atty. Gen., Tucson, for appellee.

Kathleen A. Kelly, Phoenix, for appellant.

## OPINION

CORCORAN, Justice.

Appellant Jimmy Kinslow (defendant) appeals from his convictions and sentences imposed for 16 felonies he committed after escaping from the New Mexico State Penitentiary. He argues that the trial court erred by disallowing his duress defense. We disagree and affirm his convictions. We also point out two sentencing errors apparent on the face of the record, but decline to modify defendant's sentences in the absence of a cross-appeal by the state. We have jurisdiction under Ariz.Const. art. 6, § 5(3), and A.R.S. § 13–4031.

### Facts

On July 4, 1987, defendant and 6 others escaped from the New Mexico State Penitentiary, where defendant was serving two consecutive life sentences for the rapes and murders of a woman and her two daughters. The New Mexico governor issued an order providing that, in apprehending the escapees, law enforcement officers should "shoot to kill, if necessary." Defendant heard of the order while monitoring radio communications on a 4–channel prison radio he obtained during the escape.

After hiding out for 3 weeks with two other inmates in a storage shed in New Mexico, defendant eventually made his way to Flagstaff, arriving there on July 29, 1987. Late that night, he broke into several vehicles, trying to find one he could "hot wire" and drive to California. He also surveyed a neighborhood, looking for houses to burglarize for food and money. After

he broke into the first house and stole food and a bottle of rum, defendant's attempt to break into a second house was aborted when a woman in the house heard noises and awoke her husband to investigate.

After breaking into a third house, defendant was discovered by one of the occupants. He ultimately took the entire family hostage, and compelled them to drive him to Barstow, California. Upon arriving in Barstow, they checked into a motel, where defendant bound the parents and two of the children. He kidnapped the third child and continued on to Garden Grove. Police arrested him shortly after he released the child.

A grand jury indicted defendant on 19 felony counts for the offenses committed in Flagstaff: armed burglary, attempted armed burglary, armed robbery, criminal damage, theft, sexual assault, kidnapping, and aggravated assault. The state later moved to "prevent the presentation of any evidence to the jury regarding the Defendant's alleged defense of 'necessity.' " Defendant responded, arguing that his defense was duress, not necessity. On March 15, 1988, the trial court granted the state's motion, finding *"no* support in the law for the defense of 'necessity' or 'duress.' " (Emphasis in original.)

With this defense foreclosed, defendant and his attorney entered into a "Stipulation and Agreement" with the state, waiving his right to a jury trial and stipulating to submission of his case to the trial judge on the record, which consisted of the grand jury transcripts, police reports, the transcript from the federal trial on defendant's kidnapping charges, and certified copies of defendant's prior convictions. Defendant also testified at an evidentiary hearing and made an offer of proof regarding his duress defense. In addition, the state and defendant provided in the Stipulation and Agreement that (1) the sexual assault counts would be dismissed, (2) crimes involving the same victim would receive *concurrent* sentences, and (3) all sentences would run *consecutively* to defendant's New Mexico sentences.

The trial court accepted the Stipulation and Agreement. After considering the evidence, the trial court found defendant guilty on the remaining 16 counts, and also made affirmative findings of dangerousness, of defendant's prior convictions, and that the 16 offenses were committed while defendant was on escape status. Defendant received 14 life sentences without possibility of parole for 25 years, a 6–year sentence and a 4.5–year sentence for his crimes. The trial judge imposed the sentences concurrently and consecutively, as outlined in the stipulation.

On this direct appeal, defendant raises a single issue: did the trial court err by disallowing his duress defense? We also address on our own motion whether we can correct the trial court's imposition of illegally lenient sentences in the absence of a cross-appeal by the state.

### *Duress Defense*

■ The elements of the duress defense are codified in A.R.S. § 13–412(A):

> Conduct which would otherwise constitute an offense is justified if a reasonable person would believe that he was compelled to engage in the proscribed conduct by the threat or use of immediate physical force against his person or the person of another which resulted or could result in serious physical injury which a reasonable person in the situation would not have resisted.

Defendant asserts that he reasonably feared for his safety because of the "shoot to kill" order. He argues that he was compelled to take hostages for protection against "outraged law enforcement officers" who, he contends, had "carte blanche to open fire on the seven escapees." We disagree.

As the court of appeals has stated:

> In order to constitute a defense ..., the coercion or duress must be *present, imminent and impending*, and of such a nature as to induce a well-grounded apprehension of death or serious bodily injury if the act is not done.

*State v. Jones,* 119 Ariz. 555, 558, 582 P.2d 645, 648 (App.1978) (emphasis added). De-

fendant presented no evidence to show that harm due to the "shoot to kill" order was "present, imminent and impending." Three weeks had passed between defendant's escape and these crimes. The evidence showed defendant knew at least one of the escaped inmates had been captured nonviolently and alive. Defendant also testified that, after his escape, he encountered a New Mexico police officer at an Albuquerque hotel who, despite recognizing defendant, did not draw his weapon or threaten defendant, and defendant was able to get away.

Finally, defendant's statements to police officers reveal his intent to burglarize the houses for money and food and then proceed to California in a stolen vehicle. He originally did not intend to take hostages, but did so only when discovered by the family during the burglary. Thus, although he may have been concerned about the "shoot to kill" order, defendant failed to show that he feared imminent physical injury from that order; consequently, the trial court did not err in precluding his duress defense.

■ We note further that A.R.S. § 13–412(B) makes the defense unavailable "if the person intentionally, knowingly or recklessly placed himself in a situation in which it was probable that he would be subjected to duress." By escaping from prison, defendant knew law enforcement officers would attempt to apprehend him, using whatever force was reasonable and necessary. Thus, by his own volition, defendant placed himself in a stressful situation, and precluded the use of a duress defense.

As the United States Supreme Court has noted:

> [O]ne principle remains constant: if there was a reasonable, legal alternative to violating the law, "a chance both to refuse to do the criminal act and also to avoid the threatened harm," the defenses [of duress and necessity] will fail.

*United States v. Bailey,* 444 U.S. 394, 410, 100 S.Ct. 624, 635, 62 L.Ed.2d 575, 591 (1980), *quoting* W. LaFave & A. Scott, *Criminal Law* 379 (1972). We find wholly implausible defendant's belief that he had no reasonable opportunity to escape the threatened harm without committing his subsequent crimes. Defendant certainly had access to a telephone and could have called police or federal agents to notify them of his intent to surrender, if he did in fact fear the "shoot to kill" order. To believe that his life would still be in danger should he choose to voluntarily surrender himself to police is incredible.

### Sentencing Discrepancies

In reviewing this record on appeal, this court became aware of two sentencing errors not raised by either party. First, because of the nature of defendant's New Mexico convictions and his convictions for aggravated assault and kidnapping regarding each of the 3 children in this case, several of his sentences were subject to the following requirement of A.R.S. § 13–604.01(F):

> A person who stands convicted of any dangerous crime against children in the first degree having been previously convicted of two or more predicate felonies shall be sentenced to life imprisonment and is not eligible for suspension or commutation of sentence, probation, pardon, parole, work furlough or release from confinement on any other basis ... *until the person has served not fewer than thirty-five years.*

(Emphasis added.) The Stipulation and Agreement provided and the trial judge informed defendant that he would be parole eligible in 25 years, rather than 35 years, and so stated in the judgment and sentence.

Second, the state and defendant provided in the Stipulation and Agreement that sentences for offenses involving the same victim would be *concurrent,* and the trial judge sentenced defendant accordingly. However, the statutes governing the aggravated assaults and kidnapping charges involving the children require that those sentences run *consecutive* to any others. A.R.S. § 13–604.01(J) (dangerous crimes against children); A.R.S. § 13–1304(B) (kidnapping victim under age 15).

█ The sentencing provisions enacted by our legislature are mandatory and may not be circumvented by agreements between prosecutors and defendants. The duty to know and adhere to the sentencing statutes is incumbent upon each prosecutor, defense counsel, and trial judge. The failure of the parties and the trial court to follow the mandatory sentencing provisions applicable to defendant's crimes resulted in defendant's receiving illegally lenient *concurrent* sentences with parole eligibility after 25 years instead of 35 years.

This court recently reaffirmed that we will not correct sentencing errors that benefit a defendant, in the context of his own appeal, absent a proper appeal or cross-appeal by the state. *State v. Dawson,* 164 Ariz. 278, 792 P.2d 741 (1990). We have no subject matter jurisdiction to correct the sentence to reflect the statutorily required minimum on our own motion. *Dawson,* 164 Ariz. at 286, 792 P.2d at 749. In this case, we note that the sentencing error makes no more than a technical difference, in any event. Even with the concurrent sentences, defendant received 7 other *consecutive* life sentences. Furthermore, defendant testified that he calculates his earliest possible release date from his prior New Mexico and federal sentences to be his 105th birthday. As a practical matter, therefore, defendant is unlikely to be released from prison at all during his lifetime, regardless of when he becomes parole eligible on these sentences.

█ The dissent suggests that we set aside the stipulation as illegal, reverse the convictions, and remand this case for reinstatement of the original 19 felony counts. Even if we had the jurisdiction to do so, which *Dawson* clearly establishes we do not, the result of such a disposition in this case would be to subject the victims to further emotional harm. The record indicates that one reason the state agreed to stipulate here was to prevent the psychological devastation that would result if this family had to testify regarding defendant's acts, which included the rapes of the mother and the 11–year–old child during the course of the family's kidnapping. In light of the technical nature of these sentencing errors, we cannot agree that such a disposition, with its resulting harm to the victims, would be the appropriate remedy in any event. *See, e.g., State v. Draper,* 162 Ariz. 433, 440, 784 P.2d 259, 166 (1989) (public policy favors protection of victims from harm and trauma).

█ Whether or not such sentencing makes a practical difference, we strongly disapprove of the actions of the parties in this case in *stipulating* to sentences below the statutorily required minimums, and of the trial court in *accepting* such a stipulation. As previously pointed out, the state has a duty to insist on imposition of sentences within the requisite statutory range, and the trial court has a duty to impose such sentences, whether or not the state insists. *State v. Ambalong,* 150 Ariz. 380, 381, 723 P.2d 729, 730 (App.1986).

### Fundamental Error

█ Pursuant to our statutory duty under A.R.S. § 13–4035, we have searched the record for fundamental error. We find that defendant's waiver of his right to jury trial and submission of his case to the court on the record was knowing, voluntary, and intelligent. *See* rule 18.1, Arizona Rules of Criminal Procedure; *State v. Avila,* 127 Ariz. 21, 25, 617 P.2d 1137, 1141 (1980). Although defendant was improperly advised that he was statutorily entitled to parole eligibility in 25 years, this error is harmless because he actually received the illegally lenient sentence promised. Our search of the record reveals no error other than that previously mentioned.

### Conclusion

The trial court did not err in disallowing defendant's duress defense. Absent a cross-appeal by the state, we have no jurisdiction to correct the sentencing errors that appear on the record in this case. Defendant's convictions and sentences are affirmed.

GORDON, C.J., FELDMAN, V.C.J., and MOELLER, J., concur.

**508**

CAMERON, Justice, concurring in part and dissenting in part:

I agree with the majority on the duress issue. However, I dissent from that part of the majority opinion refusing to correct the sentencing discrepancies apparent on the record. As I stated in *State v. Dawson*, "the result of the majority opinion is that a defendant and a prosecuting attorney may agree to an unlawfully lenient sentence that becomes final if the trial judge fails to correct it and if the state fails to appeal." 164 Ariz. 278, 286, 792 P.2d 741, 749 (1990). That result has come to fruition in this case.

As noted by the majority, the defendant entered into a "stipulation and agreement" which allowed the court to find defendant guilty of 11 felony counts and which resulted in an unlawfully lenient sentence for defendant.

The majority holds that this court lacks subject matter jurisdiction to correct sentencing errors when the state fails to appeal or cross-appeal. I believe, however, that an illegal sentence is fundamental error. This court has subject matter jurisdiction to correct an illegal sentence even though neither party raises the error. A.R.S. §§ 13-4035, -4036.

Because I believe that an illegally lenient sentence is fundamental error, I would set aside the stipulation and agreement, reverse the convictions and sentences, and remand and reinstate the original charges. The state and the defendant could then enter into another "stipulation and agreement" or go to trial on all counts. In any event, the trial court would be able to impose a legally sufficient sentence as the legislature has mandated.