NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DAVONTE ERIC HEARN, *Appellant.*

No. 1 CA-CR 15-0230
FILED 8-4-2016

Appeal from the Superior Court in Maricopa County
No.  CR2012-137842-002DT
The Honorable Virginia L. Richter, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Samuel A. Thumma joined.

**J O N E S**, Judge:

¶1        Davonte Hearn appeals his convictions for one count of burglary in the first degree, four counts of kidnapping, one count of attempted armed robbery, and one count of attempted kidnapping.  On appeal, Hearn argues the trial court erred in denying his motion for judgment of acquittal.  For the following reasons, we affirm.

## FACTS[1] AND PROCEDURAL HISTORY

¶2        In the early morning hours of July 16, 2012, Todd L. returned to the home he shared with Teresa R., finding it unexpectedly dark.  After entering the residence, Todd was approached by co-defendant Javon Germany, who pointed a gun at his face and said "shut up."  At the same time, Hearn approached Todd from behind, "put a pistol to the back of [his] head" and stated, "don't make me blow your fucking head off."  The men then bound Todd's hands, feet, eyes, and mouth with duct tape and plastic zip-ties; they also asked when Teresa would return.  Todd testified he believed the men were burglarizing his home and would kill him.

¶3        The men then moved Todd to the top of the stairs.  When they later heard Teresa arrive, the men told Todd if he "made any noise or anything . . . they were going to kill Teresa and the kids," and took up their positions by the door.

¶4        Teresa's six-year-old daughter, A.V., entered the home first, followed by Teresa, who was carrying her two-year-old son, D.L.  Once inside, Hearn held a gun to Teresa's head and told her "to be quiet and go

---

[1]        We view the facts in the light most favorable to upholding the verdict and resolve all reasonable inferences against the defendant.  *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2 (App. 2015) (citing *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

upstairs." Teresa testified she believed that if she ran, the men would grab A.V., so the three went upstairs to A.V.'s bedroom.

¶5        Teresa and the children discovered Todd, still bound, at the top of the stairs with Germany standing nearby and still holding a gun. When the men said they were going to tie Teresa and the children up, she refused, stating, "you're not going to touch me or my kids." The men told Teresa "not to move, not to do anything, to stay in the room," while they sat on stools directly outside. Both Todd and Teresa later smelled the odor of burnt marijuana coming from downstairs. Hearn told Teresa she was beautiful and that he was "going to take [her] with [him] when [he was] done," and both Todd and Teresa overheard Hearn say he was going to "get a piece of" Teresa.

¶6        Meanwhile, Todd remained bound on the floor. Hearn and Germany took approximately $2,300 from Todd's person and also advised him they had discovered other money in a bedroom drawer. They asked Todd to use the money to buy them drugs, and threatened they would "kill [Todd's] whole family and make [him] live with that for the rest of [his] life" if he did not cooperate.

¶7        Later that morning, Todd convinced the men that if he did not deliver a vehicle to a customer as promised, the customer would worry about his absence. Hearn left with Todd to deliver the vehicle, leaving Teresa and the children at the residence with Germany. Germany told Todd that if he "tried anything funny," Germany would kill Teresa and the children. Nonetheless, Todd was able to alert a garage attendant that he and his family had been kidnapped. The attendant obtained Todd's license plate number and called 9-1-1. After delivering the vehicle and a failed attempt to obtain the drugs Hearn and Germany requested, Todd and Hearn were pulled over and apprehended by Maricopa County Sheriff's Office deputies.

¶8        Shortly thereafter, two deputies approached the residence. Germany directed Teresa to answer the door and tell them everything was okay while he stood upstairs with the children. After stating everything was okay, Teresa mouthed to the deputies, "No. He's in the house," then advised she had to go and closed the door. When Germany went outside to check the backyard, Teresa locked him outside, where he was immediately apprehended. By this time, the children had been in A.V.'s bedroom for approximately ten hours.

3

¶9          Following his arrest and waiver of rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), Hearn admitted he participated in the events described, but claimed he did so "under duress."  Hearn claimed he and his family would be harmed by "some of the other people involved" if he did not participate.  However, Hearn did not identify a particular person who might follow through on the alleged threat or claim to be held at gunpoint at any time and was unable to explain why he did not free Todd or notify law enforcement about the events when he had the opportunity to do so.

¶10          After the incident, Todd and Teresa discovered they were missing approximately $7,800 in jewelry, a pistol, and the keys to Teresa's Porsche.  Officers found $2,380, the amount taken from Todd's person, in Hearn's sock.  Between the residence, the backyard, and Todd's vehicle, the officers also found three handguns, two pairs of black work gloves, and a white cell phone, as well as zip-ties, duct tape, plastic wrap, and scissors.

¶11          Hearn and Germany were charged with one count of burglary in the first degree, four counts of kidnapping, and two counts of attempted armed robbery and were tried together.  Hearn asserted he lacked criminal intent because he acted under duress, but did not take the stand or otherwise offer evidence in support of that defense.

¶12          At the close of the State's evidence, Hearn joined Germany's motion for a directed verdict on counts four and five, alleging the kidnapping of the children, on the grounds that neither defendant "specifically targeted" the children, and there was no evidence the children's freedom was restricted by anyone other than Teresa.  The motion was denied.  The defendants did not present any witnesses, and a twelve-person jury found Hearn guilty as charged.  The jury also found the State had proven beyond a reasonable doubt six aggravating factors, not challenged on appeal, relative to the kidnappings of Todd and Teresa, the burglary, and the attempted armed robbery.  Regarding the kidnapping of six-year-old A.V., the jury found the State had proven five aggravators, and, regarding the kidnapping of two-year-old D.L., the jury found the State had proven two aggravators.  After additional proceedings, the jury determined the State had not proven that the offenses against A.V. and D.L. were dangerous crimes against children.

¶13          The trial court sentenced Hearn as a dangerous, non-repetitive offender to concurrent prison sentences, the longest of which is twenty-one years.  Hearn timely appealed.  We have jurisdiction pursuant

to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1),[2] 13-4031, and -4033(A)(1).

## DISCUSSION

**¶14** Hearn argues the trial court erred in denying his motion for judgment of acquittal alleging: (1) there was insufficient evidence to convict him of kidnapping the two child victims, and (2) he was entitled to judgment as a matter of law on his defense of duress. A directed verdict is appropriate "if there is no substantial evidence to warrant a conviction." Ariz. R. Crim. P. 20(a). We review the denial of a Rule 20 motion and the sufficiency of the evidence to support a conviction *de novo*, *Harm*, 236 Ariz. at 406, ¶ 11 (citing *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011)), and will reverse "only where there is a complete absence of probative facts to support the conviction," *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996) (quoting *State v. Scott*, 113 Ariz. 423, 424-25 (1976)).

## I.      Kidnapping of A.V. and D.L.

**¶15** As relevant here, a person commits kidnapping by "knowingly restraining another person with the intent to: . . . [i]nflict death, physical injury or a sexual offense on the victim, or to otherwise aid in the commission of a felony." A.R.S. § 13-1304(A)(3). On appeal, Hearn argues only that there was insufficient evidence of restraint to convict him of kidnapping A.V. and D.L. because neither Germany nor Hearn ordered the children into A.V.'s bedroom, and Teresa never asked that they be allowed to leave.

**¶16** "Restrain" means:

> [T]o restrict a person's movements without consent, without legal authority, and in a manner which interferes substantially with such person's liberty, by either moving such person from one place to another or by confining such person. Restraint is without consent if it is accomplished by:
>
> > (a) Physical force, intimidation or deception; or
> >
> > (b) Any means including acquiescence of the victim if the victim is a child less than eighteen years old or an

---

[2]      Absent material changes from the relevant date, we cite a statute's current version.

incompetent person and the victim's lawful custodian
has not acquiesced in the movement or confinement.

A.R.S. § 13-1301(2). Although the children were not directly threatened or ordered to take any particular action, sufficient evidence was presented upon which a reasonable juror could find, beyond a reasonable doubt, that the children were not free to leave A.V.'s bedroom and were thereby confined without consent of their guardian. Hearn does not dispute Teresa was confined upstairs during the events, with at least one armed assailant standing watch. He does not explain how the six- and two-year-old children were expected to function independent of their primary caretaker. And, even if Hearn and Germany did not point their guns at the children, the evidence indicated that both A.V. and D.L. were aware of and intimidated by the presence of the guns in their home and directed at their parents.

¶17        Hearn points out that Teresa did not negotiate an escape for the children or simply abandon them downstairs while Todd and Teresa were restrained and under armed guard upstairs for ten hours, but these facts are irrelevant; nor did the assailants take any action to release the children or otherwise indicate they were free to leave if Teresa could make suitable arrangements. Indeed, Hearn and Germany's actions suggest otherwise; their repeated threats to Todd that they would kill the children if he did not comply with their directions indicate the children were a vital part of their plan to obtain money and/or drugs from Todd, and, therefore, they would not readily have released the children. Substantial evidence supports Hearn's conviction; accordingly, we find no error.

## II.    Duress

¶18        Hearn also argues he was entitled to a directed verdict on his defense of duress, asserting that, because there was sufficient evidence to warrant an instruction on the duress defense, "it would too, have been reasonable, in light of all the evidence presented, to determine that duress was an absolute defense as to all counts and to grant [Hearn]'s motion for judgment of acquittal." Because this argument is raised for the first time on appeal, we review only for fundamental error. *State v. Turner*, 239 Ariz. 390, 393, ¶ 13 (App. 2016) (citing *State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19-20 (2005)).

¶19        Duress occurs where "a reasonable person would believe that he was compelled to engage in the proscribed conduct by the threat or use of immediate physical force against his person or the person of another

which resulted or could result in serious physical injury which a reasonable person in the situation would not have resisted." A.R.S. § 13-412(A). "In order to constitute a defense . . . the coercion or duress must be present, imminent and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily injury if the act is not done." *State v. Kinslow*, 165 Ariz. 503, 505 (1990) (quoting *State v. Jones*, 119 Ariz. 555, 558 (App. 1978)); *see also State v. Lamar*, 144 Ariz. 490, 497 (App. 1984) ("Duress envisions a third person compelling a person by the threat of immediate physical violence to commit a crime against another person or the property of another person."). Once Hearn presented evidence of duress, the State was required to prove beyond a reasonable doubt that Hearn did not have any justification for his actions. *See* A.R.S. § 13-205(A), -412. However, a directed verdict in Hearn's favor would be appropriate only if there is a complete absence of probative facts to support the conviction. *See supra* ¶ 14.

¶20    The trial court properly instructed the jury on the defense of duress, and the jury, by returning guilty verdicts, rejected that claim. Indeed, Hearn did not claim to be held at gunpoint at any time and was unable to explain why, on the multiple occasions he was free from the influence of his cohorts, he did not free Todd or notify law enforcement about the events. *See Kinslow*, 165 Ariz. at 506 (finding it "wholly implausible" that the defendant "had no reasonable opportunity to escape the threatened harm without committing subsequent crimes" because he "certainly had access to a telephone and could have called police or federal agents to notify them of his intent to surrender"). Moreover, Hearn's conduct was not consistent with that of a person exposed to a threat of immediate violence; evidence was presented that Hearn was still able to make casual sexual advances toward Teresa and smoke marijuana in the residence while the victims were held captive upstairs. We find no error, fundamental or otherwise.

## CONCLUSION

¶21    Hearn's convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: AA