NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JAYSEN LEMAR LEONARD, *Appellant.*

No. 1 CA-CR 23-0247

FILED 10-01-2024

Appeal from the Superior Court in Maricopa County
No.  CR2022-110828-001
The Honorable Lisa Ann VandenBerg, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Karen Moody
*Counsel for Appellee*

Law Office of Stephen M. Johnson Inc, Phoenix
By Stephen M. Johnson
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge D. Steven Williams joined.

---

**KILEY**, Judge:

**¶1** Jaysen Leonard appeals his conviction and resulting sentence for misconduct involving weapons. Because he does not establish error, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2** Viewed in the requisite light most favorable to sustaining the jury's verdicts, *State v. Thompson*, 252 Ariz. 279, 287, ¶ 2 n. 3 (2022), the evidence shows that one evening in March 2022, a Phoenix police officer was in the vicinity of 26th Avenue and Bethany Home Road when he was approached by someone from a nearby bar with a request for assistance. The officer entered the bar and saw a man, later identified as Leonard, lying on the floor being restrained by security guards. Upon seeing the officer, a security guard yelled that Leonard "ha[d] a gun in his pocket." The officer removed the gun from Leonard's pocket. After being advised of his *Miranda* rights,[1] Leonard admitted that he is a convicted felon and acknowledged that he is not permitted to possess a firearm.

**¶3** The State charged Leonard with misconduct involving weapons, a class four felony, in violation of A.R.S. § 13-3102(A)(4) (prohibited possessor).

**¶4** At trial, the State presented, *inter alia*, the testimony of the responding officer and documentary evidence of Leonard's felony conviction. Leonard then testified, stating that he arrived at the bar that evening unarmed when he was approached by two men he did not know. One of the men "shoulder check[ed]" him in an "aggressive" manner and then the other, who stood facing him "almost nose to nose," accused him of taking "his girl's money." Although Leonard denied the accusation, the man demanded that Leonard turn over his watch to make up for the

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 471 (1966).

purported theft. At that point, Leonard testified, he began to fear he was "being strong armed."

¶5　　　Leonard testified that "one of [his] friends" at the bar, observing the "slightly heated conversation," approached Leonard and "kind of nudged" him. Leonard looked down and saw that the friend was offering him a gun. Fearing that the two men would "assault" him, Leonard stated, he "grabbed" the gun and put it in his pocket. He insisted, however, that it "wasn't [his] intent to harm or hurt anyone or even have possession of the gun."

¶6　　　According to Leonard, one of the two men then sucker-punched him, and the other grabbed him from behind and "choked" him until he "passed out." When he came to, he stated, he was "on the ground" and the assailants were gone.

¶7　　　When the State sought to confirm, during its cross-examination of Leonard, that he took the gun before he was punched, Leonard said, "It all happened so fast I don't know if I'm putting it in the right order, but it was definitely—an assault happened and I grabbed his gun."

¶8　　　Leonard admitted that neither of his assailants threatened him with a weapon. He also admitted that he never told the arresting officer that the gun did not belong to him, that it was given to him by a friend after he arrived at the bar, that he feared for his life, or that he was choked until he passed out. The bar had no surveillance cameras, but the responding officer's body-worn camera showed that Leonard was conscious when the officer entered the bar.

¶9　　　The superior court instructed the jury on necessity as a justification for the charged conduct, *see* A.R.S. § 13-417, but denied Leonard's request for an instruction on duress, *see* A.R.S. § 13-412. The court reasoned that Leonard "ha[d] not argued a theory of the case that would make duress applicable," the necessity instruction was "adequate . . . based on the defense's theory," and a "duress instruction would potentially cause the jury to be confused or misled with regards to the state of law."

¶10　　　Jurors found Leonard guilty, and the superior court sentenced him to four years' imprisonment. Leonard timely appealed. We have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

¶11 Leonard argues he was entitled to a duress instruction and that the superior court violated his federal constitutional right to due process by depriving him of the opportunity to assert a duress defense. We review the superior court's refusal to give a requested instruction for an abuse of discretion. *State v. Richter*, 245 Ariz. 1, 4, ¶ 11 (2018). But we review evidentiary rulings involving constitutional questions *de novo. State v. Armstrong*, 218 Ariz. 451, 458, ¶ 20 (2008). Because Leonard did not raise a due process objection at trial, we review that claim for fundamental error only. *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018).

¶12 "[A] defendant is entitled to a justification instruction if it is supported by the slightest evidence." *State v. Ruggiero*, 211 Ariz. 262, 264, ¶ 10 (App. 2005) (cleaned up). A justification instruction "need not be given," however, "unless it is reasonably and clearly supported by the evidence." *State v. Vassell*, 238 Ariz. 281, 284, ¶ 9 (App. 2015) (cleaned up). In evaluating whether a justification instruction should have been given, we view the evidence in the light most favorable to the defendant. *State v. King*, 225 Ariz. 87, 90, ¶ 13 (2010).

¶13 Duress and necessity are both justification defenses set forth in A.R.S. Title 13, Chapter 4. The duress defense is codified in A.R.S. § 13-412(A), which provides that

> [c]onduct which would otherwise constitute an offense is justified if a reasonable person would believe that he was compelled to engage in the proscribed conduct by the threat or use of immediate physical force against his person or the person of another which resulted or could result in serious physical injury which a reasonable person in the situation would not have resisted.

¶14 The use or threat of force necessary to support a duress defense "must be present, imminent and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily injury if the [criminal] act is not done." *State v. Jones*, 119 Ariz. 555, 558 (App. 1978). Significantly, however, the defense of duress is distinct from self-defense. *State v. Lamar*, 144 Ariz. 490, 497 (App. 1984) ("The defense of duress is not available as a substitute for self-defense."). The defense of duress "envisions a third person compelling a person by the threat of immediate physical violence to commit a crime *against another person or the property of another person.*" *Id.* (emphasis added). The duress defense applies, in other words, "only when third parties are the victims." *Richter*, 245 Ariz. at 8, ¶ 31.

4

¶15 Leonard testified that he accepted the gun proffered by a friend and put it in his pocket because he was in fear for his own safety. He never claimed, however, that he felt coerced by the two aggressors "to commit a crime against another person or the property of another person." *Lamar*, 144 Ariz. at 497. No evidence was presented, nor did the State allege, that Leonard ever caused or threatened harm to a third party. Leonard's testimony thus could not possibly support a duress defense, and the trial court properly declined to instruct the jury on duress. *See State v. Speers*, 209 Ariz. 125, 132, ¶ 27 (App. 2004) ("A trial court commits reversible error when it instructs on an issue or theory that is not supported by evidence because it invites the jury to speculate as to possible non-existent circumstances.") (cleaned up).

¶16 In any event, even if the facts of this case could be said to support a duress instruction, the superior court's refusal to instruct the jurors on duress entitles Leonard to no relief because the necessity instruction adequately covered the issue of whether Leonard was justified in taking possession of the gun when confronted by two aggressors. *State v. Almeida*, 238 Ariz. 77, 81, ¶ 17 (App. 2015) ("A trial court is not required to give a requested jury instruction if its other instructions adequately cover the issue.").

¶17 The court gave the jurors the following instruction on the defense of necessity:

> Now, the defendant was justified in engaging in conduct that constituted the offense of misconduct involving weapons if
>
> 1, a reasonable person in the defendant's situation would be compelled to engage in the conduct;
>
> And 2, the defendant had no reasonable alternative to avoid imminent public or private injury greater than the injury the defendant reasonably believed might have resulted from the conduct constituting the offense;
>
> And, the defendant, 3, did not intentionally, knowingly, or recklessly place himself in a situation in which it was probable that the defendant would have to engage in the conduct constituting the offense.
>
> You must measure the defendant's belief against what a reasonable person in the situation would have believed. The State has the burden of proving beyond a reasonable doubt

5

that the defendant did not act with such justification. If the State fails to carry this burden, then you must find the defendant not guilty of the charge.

**¶18**       The standard instruction on the defense of duress provides in part that "[a] defendant is justified" in engaging in conduct giving rise to criminal charges "if a reasonable person in the defendant's circumstances would have believed" that he or she "was compelled to commit such conduct" by another's use or threat of force that could result "in serious physical injury that a reasonable person in the situation would not have resisted." RAJI Stat. Crim. 4.12 (duress) (4th ed. 2016); *see also* A.R.S. § 13-412(A).

**¶19**       "Common law historically distinguished between the defenses of duress and necessity"—characterizing duress as coercion by "an unlawful threat of imminent death or serious bodily injury" from another person while describing necessity as a choice between "two evils" compelled by a non-human force. *United States v. Bailey*, 444 U.S. 394, 409–10 (1980). More recently, however, "cases have tended to blur the distinction" between the defenses. *Id.* at 410. Under the circumstances here, Leonard's claim that he acted under duress was encompassed by the necessity instruction. Under either defense, Leonard had just two options: to take the gun or not to take the gun. To find Leonard's conduct justified by necessity, jurors would need to find that a "reasonable person" in his situation "would be compelled" to take the gun without any "reasonable alternative" to doing so. A.R.S. § 13-417(A). To find Leonard's conduct justified by duress, jurors would need to make essentially the same finding: that a "reasonable person" in his situation would have been "compelled" to take the gun and could "not have resisted" doing so. A.R.S. § 13-412(A). Under the circumstances presented in this case, the necessity instruction adequately covered Leonard's claim that he acted as he did under duress. *Cf. Bailey*, 444 U.S. at 410 ("Under any definition of these defenses [of duress and necessity] one principle remains constant: if there was a reasonable, legal alternative to violating the law . . . the defenses will fail.").

**¶20**       Leonard submits that a duress instruction was warranted because "the assailants' application of force against him, coupled with the inherent danger of the situation, rendered him incapable of resisting the pressure exerted upon him." But Leonard could make that same argument in support of a necessity defense because being "incapable of resisting the pressure" to take the gun is just another way of saying one is "compelled to do so." Indeed, that is precisely what Leonard's counsel told the jurors in closing argument. Referring to Leonard's testimony about his confrontation

with the alleged assailants, defense counsel asked the jurors whether they would feel "compelled" to take possession of a weapon if someone "started choking your neck and punching you in the face?" before answering his own question: "Which one wouldn't? You all would." Because the necessity instruction encompassed Leonard's position that a reasonable person in his position would have felt compelled to take possession of the gun, the court's unwillingness to give a duress instruction as well entitles him to no relief. *Almeida*, 238 Ariz. at 81, ¶ 17.

**¶21** Leonard also argues that the superior court's refusal to give a duress instruction deprived him of due process. *See State v. Lehr*, 227 Ariz. 140, 150, ¶ 39 (2011) ("The Due Process Clause of the Fourteenth Amendment requires that 'criminal defendants be afforded a meaningful opportunity to present a complete defense.'") (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). Our analysis of Leonard's claim of instructional error dooms his constitutional claim. Because the necessity instruction encompassed his claim of duress, Leonard was not deprived of an opportunity to present a complete defense at trial. *See State v. Reaves*, 252 Ariz. 553, 565, ¶¶ 31–33 (App. 2022) (holding that the superior court's refusal to give a requested instruction did not deprive the defendant of a complete defense when the instruction given adequately addressed the law relevant to the defendant's proposed defense). Leonard's due process claim thus fails.

**CONCLUSION**

**¶22** We affirm Leonard's conviction and sentence.

