NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

SPENCER CARL CRUZ, *Appellant.*

No. 1 CA-CR 24-0429

FILED 07-24-2025

Appeal from the Superior Court in Mohave County
No. CR-2023-01332
The Honorable Billy K. Sipe Jr., Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Madeline Shupe
*Counsel for Appellee*

Jill L. Evans Attorney at Law, Flagstaff
By Jill L. Evans
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Andrew M. Jacobs joined.

_____

**C A T L E T T**, Judge:

¶1            Spencer Cruz ("Cruz") appeals his convictions and sentences for aggravated assault, criminal damage, and resisting arrest. Cruz argues the superior court erred in refusing to instruct the jury on the justification defense of necessity, giving the jury only a partial instruction on self-defense, and imposing consecutive sentences for his convictions. Seeing no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2            On August 10, 2023, Cruz's mother called Bullhead City Police to report Cruz was violating an order of protection by visiting her home. Before police arrived, Cruz left and went to a restaurant, where he also called Bullhead City Police.

¶3            A detective met Cruz at the restaurant and asked him "basic investigative questions." Cruz was "highly upset over the altercation that happened at his mother's house." Cruz admitted he went to his mother's house and had been served with the order of protection, but he believed the order was invalid because "they had no right to evict him from the property." The detective responded that the order was a legal document prohibiting him from visiting his mother's house. Cruz disagreed, claiming he went to "property law school" and offered to show the detective the order. Cruz continued to argue with the detective while searching for the order in his backpack.

¶4            The detective decided to arrest Cruz for violating the order. When the detective approached and asked Cruz to turn around, Cruz swatted the detective's arms away, retreated from the detective, and took a "fighter stance[.]" The detective told Cruz he was under arrest for violating an order of protection, unholstered his Taser, and instructed Cruz to get on the ground. The detective repeated his command and said he would deploy his Taser if Cruz did not comply. When Cruz did not immediately do so, the detective tased him.

¶5          Cruz fell to the ground and the detective attempted to arrest him, but Cruz struggled against him.  Cruz ripped the Taser's probes off his body and fought with the detective over the Taser.  Cruz gained control of the Taser, rose to his feet, and backed away from the detective.  Cruz threw the Taser to the ground, breaking it, and ran away.  Police arrested Cruz three months later.

¶6          The State charged Cruz with two counts of aggravated assault (counts one and two), one count of criminal damage (count three), one count of resisting arrest (count four), and one count of interfering with judicial proceedings (count five).  *See* A.R.S. §§ 13-1204(A)(8)(a), 13-1602, 13-1204(A)(9)(c), 13-2508(A)(1), 13-2810.  The court later dismissed count five.

¶7          At the final management conference, Cruz requested a jury instruction on necessity as a defense.  *See* A.R.S. § 13-417.  When asked whether he would request any other special jury instructions, Cruz said no.

¶8          Later, at a different hearing four days before trial, Cruz requested an instruction on self-defense and said he planned to amend his defenses that day.  The court responded that it was uncertain whether Cruz's request was timely, but it would decide the issue when Cruz amended his defenses.  But Cruz never amended his defenses.

¶9          At the same hearing, the parties discussed other jury instructions.  The court asked whether the parties wanted to include a jury instruction on the definition of "arrest" in A.R.S. § 13-3881.  Cruz responded yes.  The court also asked counsel to consider adding an instruction on A.R.S. § 13-404(B)(2), which discusses when physical force is justified to resist arrest.

¶10          After the parties presented their evidence at trial, they discussed the final jury instructions with the court.  The court denied Cruz's request to include a necessity defense instruction, reasoning that Cruz had a reasonable alternative—to submit to the detective's commands—and Cruz put himself in the situation by not complying with the detective.

¶11          The court later asked the parties whether they wished to include an instruction on § 13-404(B)(2).  The State said the court should do so; Cruz stated, "it's along the same lines it's justification, so I don't have a problem with it being admitted."  The court added the instruction after an instruction defining "arrest."  *See* A.R.S. § 13-3881.

¶12        The jury acquitted Cruz of the first aggravated assault charge but found him guilty of the second aggravated assault charge, criminal damage, and resisting arrest.   The superior court sentenced Cruz to a minimum term of six months for each conviction, running consecutively. The superior court imposed consecutive sentences because Cruz's "physical acts" in resisting arrest were "a separate crime and a separate harm than taking control of the Taser and then damaging the Taser."

¶13        Cruz appealed; we have jurisdiction.   *See* A.R.S. §§ 12-120.21(A)(1), 13-4031, 13-4033(A)(1).

## DISCUSSION

¶14        Cruz argues the court erred by (1) declining his request for a jury instruction on necessity, (2) failing to adequately instruct the jury on self-defense, and (3) imposing consecutive sentences.   We address each argument in turn.

## I.        Necessity Defense Instruction

¶15        Cruz argues the court erred in denying his request for a jury instruction on necessity because he presented more than the slightest evidence supporting that defense.   "A party is entitled to an instruction on any theory reasonably supported by the evidence."   *State v. Rodriguez*, 192 Ariz. 58, 61 ¶ 16 (1998).   Only the "slightest evidence" need be presented to support giving an instruction.   *State v. Almeida*, 238 Ariz. 77, 79 ¶ 9 (App. 2015).   We review a superior court's refusal to give a jury instruction for an abuse of discretion, but "we independently assess whether the evidence supported a justification instruction[.]"   *Id.* at 80 ¶ 9.

¶16        To establish a necessity defense under § 13-417, the defendant must show he "was compelled to engage in the proscribed conduct and the [defendant] had no reasonable alternative to avoid imminent public or private injury greater than the injury that might reasonably result from the [defendant's] own conduct."   A.R.S. § 13-417(A); *State v. Medina*, 244 Ariz. 361, 364 ¶ 8 (App. 2018).   But a defendant may not assert a necessity defense if he "intentionally, knowingly or recklessly placed himself in the situation in which it was probable that [he] would have to engage in the proscribed conduct."   A.R.S. § 13-417(B).

¶17        Cruz argues he was entitled to a necessity instruction because he acted "reasonably as a necessity to resist the [T]aser and imminent pain and injury, . . . and that it was [the detective] and not Cruz that placed Cruz in that position."   We disagree for three reasons.

4

¶18        First, Cruz had a reasonable alternative to resisting arrest, fighting with the detective, and damaging the Taser — he could have obeyed the detective's lawful commands and submitted to the arrest. *See United States v. Bailey*, 444 U.S. 394, 410 (1980).

¶19        Second, the detective gave Cruz ample opportunity to change course and comply with his demands before deploying his Taser. *See Medina*, 244 Ariz. at 364 ¶¶ 8, 10 (explaining the use of the word "imminent" in § 13-417 "requires that the threat of the injury be one that is immediate" and "without [imminence], a necessity does not exist").

¶20        Third, by ignoring the detective's commands and resisting arrest, Cruz recklessly put himself in a position where he could be tased. Again, the detective told Cruz he was under arrest for violating an order of protection and repeatedly commanded Cruz to submit. Instead of obeying the detective's orders, Cruz argued with him, stepped back into a fighting stance, and ignored the detective's commands, prompting the detective to deploy his Taser. *See State v. Kinslow*, 165 Ariz. 503, 506 (1990) ("[I]f there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defenses of duress and necessity will fail.") (internal brackets omitted) (quoting *Bailey*, 444 U.S. at 410)).

¶21        We reject Cruz's suggestion in his reply brief that the detective used excessive force and Cruz "reasonably react[ed] to it." Cruz claims his expert witness testified to that effect, but the record contains no such testimony. The expert testified only that the detective ineffectively deployed his Taser because he was too close to Cruz, which caused Cruz "immense pain." And, contrary to Cruz's contention, the expert agreed that "if [Cruz] had complied with [the detective], then it wouldn't have escalated to where it did."

¶22        Because Cruz failed to present even the slightest evidence supporting a necessity defense, the court did not err in refusing a necessity instruction.

## II.        Self-Defense Instruction

¶23        Cruz asserts he requested an instruction on self-defense and the court erred by instructing the jury only on § 13-404(B)(2). He claims doing so was "incomplete and misleading," "shifted the burden of proof," and "did not accurately state the law of self-defense." Cruz argues the court deprived him of his right "to present a complete defense[.]"

¶24 We note that, contrary to Cruz's assertion, the record does not show that he ever requested a self-defense instruction. Cruz filed a notice of defenses, which disclosed only the following defenses: insufficiency of state's evidence, lack of specific intent, no criminal intent, and necessity. Although Cruz mentioned four days before trial that he wanted an instruction on self-defense, that discussion centered on whether that request was timely. Despite telling the court he would do so, Cruz never amended his defenses. Cruz also made no mention of self-defense at trial, and when the parties discussed the final jury instructions with the court, Cruz did not request a self-defense instruction. Because "trial courts have no sua sponte duty to instruct the jury on justification defenses that have not been requested[,]" the superior court did not err in failing to instruct the jury on self-defense. *State v. Brown*, 258 Ariz. 270, ___ ¶ 25 (App. 2024).

¶25 Yet Cruz raises a related issue—whether the court erred by instructing the jury on § 13-404(B)(2). When the court proposed giving that instruction, Cruz responded "it's along the same lines it's justification, so I don't have a problem with it being admitted." Because Cruz did not object to the § 13-404(B)(2) instruction, we review for fundamental error. *See State v. Escalante*, 245 Ariz. 135, 138 ¶ 1 (2018).

¶26 To establish fundamental error, an appellant must show that the court erred. *Id.* at 142 ¶ 21. The appellant must also show the error was fundamental because it (1) went to the foundation of the case, (2) took away an essential right necessary to demonstrate a viable defense, or (3) was so egregious that he could not have possibly received a fair trial. *Id.* Lastly, if the appellant relies on prong one or two, he must also show prejudice. *Id.* "The [appellant] bears the burden of persuasion at each step." *Id.*

¶27 We review de novo whether the superior court "properly instructed the jury," and whether the jury instructions "properly state the law[.]" *State v. Ewer*, 254 Ariz. 326, 329 ¶ 10 (2023); *State v. Payne*, 233 Ariz. 484, 505 ¶ 68 (2013). We consider the jury instructions "in their entirety when determining whether they adequately reflect the law." *State v. Gallegos*, 178 Ariz. 1, 10 (1994).

¶28 The superior court provided the following instruction, which mirrors § 13-404(B)(2), to the jury:

> The threat or use of physical force against another is not justified to resist an arrest that the defendant knew or should have known was being made by a peace officer or by a person acting in a peace officer's presence and at the peace officer's

direction, whether the arrest was lawful or unlawful, unless the physical force used by the peace officer exceeds that allowed by law.

**¶29**          The State charged Cruz with resisting arrest.  The Revised Arizona Jury Instructions ("RAJI") recommend an instruction for resisting arrest.  RAJI Standard Criminal 25.08 (6th ed. 2022).  The comments to that instruction explain that "[t]here may be a need to define 'arrest'" as articulated in § 13-3881, which the court decided was necessary in Cruz's case.  RAJI Stand. Crim. 25.08 cmt.  The RAJI comment further explains that "the use of excessive force by the peace officer may be a *defense*" and specifically cites A.R.S. § 13-404(B)(2).  RAJI Stand. Crim. 25.08 cmt (emphasis added).  In other words, instructing the jury on § 13-404(B)(2) in resisting arrest cases may be appropriate when the defendant alleges excessive force.  Cruz also omits that immediately after giving the § 13-404(B)(2) instruction, the court instructed the jury that "[m]ere argument with or criticism of a peace officer is not sufficient grounds, without more, to find the person guilty of resisting arrest."  RAJI Stand. Crim. 25.081.

**¶30**          The two instructions given supported Cruz's defense that he acted the way he did because the officer applied excessive force.  Those instructions made it less likely that the jury would find him guilty of resisting arrest had it accepted Cruz's version of events.  So Cruz's counsel was correct when he first responded that the instruction with which Cruz now takes issue is "along the same lines it's justification."  Instructing the jury that one can use physical force against a peace officer if "the physical force used by the peace officer exceeds that allowed by law" did not deprive Cruz of a complete defense—it furthered his defense.

**¶31**          Cruz's argument that the § 13-404(B)(2) instruction "shifted the burden of proof" similarly fails.  The instruction itself did not do so—at most it was silent on the burden of proof.  But the superior court repeatedly reminded the jury that the State had the burden of proving each element of the charges beyond a reasonable doubt, with the final reminder occurring immediately after the § 13-404(B)(2) instruction.  Cruz has shown no error—let alone fundamental error—in the court's decision to instruct the jury on § 13-404(B)(2).

### III.    Consecutive Sentences

**¶32**          Cruz argues the superior court erred by imposing consecutive sentences for his three convictions because they relied on a single act.  *See State v. Gordon*, 161 Ariz. 308 (1989); A.R.S. § 13-116.  Because Cruz did not

object at sentencing to running the sentences consecutively, we also review that argument for fundamental error. *See State v. Carlson*, 237 Ariz. 381, 400 ¶ 78 (2015).

¶33 To determine whether separate convictions rely on "a single act" under § 13-116, we apply a three-part test. First, we consider "the facts of each crime separately, subtracting from the factual transaction the evidence necessary to convict on the ultimate charge . . . . If the remaining evidence satisfies the elements of the other crime, then consecutive sentences may be permissible[.]" *Gordon*, 161 Ariz. at 315. Then, we consider "whether, given the entire 'transaction,' it was factually impossible to commit the ultimate crime without also committing the secondary crime. If so, then the likelihood will increase that the defendant committed a single act[.]" *Id.* Finally, we consider "whether the defendant's conduct in committing the lesser crime caused the victim to suffer an additional risk of harm beyond that inherent in the ultimate crime. If so, ordinarily the court should find that the defendant committed multiple acts and should receive consecutive sentences." *Id.*

¶34 Both Cruz and the State agree that the "ultimate charge" here is resisting arrest. We agree. A person commits resisting arrest by "intentionally preventing or attempting to prevent a person reasonably known to him to be a peace officer, acting under color of such official authority, from effecting an arrest by . . . [u]sing or threatening to use physical force against the peace officer or another." A.R.S. § 13-2508(A)(1). The State's evidence at trial was sufficient to establish Cruz committed resisting arrest. The detective testified, and his body camera footage showed, that when he told Cruz to turn around to arrest him, Cruz swatted the officer's hands away and retreated into a "fighter stance."

¶35 Looking only at the evidence remaining after the elements of resisting arrest are satisfied, Cruz engaged in a separate act constituting aggravated assault. A person commits aggravated assault if they knowingly take or attempt "to exercise control over . . . [a]ny implement that is being used by a peace officer[.]" A.R.S. § 13-1204(A)(9)(c). The detective testified, and his body camera footage showed, that after being tased, Cruz gained control of the Taser by taking it from the detective. After doing so, Cruz committed a third separate act—he threw the Taser to the ground, which is criminal damage. *See* A.R.S. § 13-1602.

¶36 We next must determine if it was factually impossible for Cruz to commit resisting arrest without also committing aggravated assault

and criminal damage. *See Gordon*, 161 Ariz. at 315. It was not. Cruz could have resisted the detective's arrest without taking the Taser or damaging it.

¶37 Finally, we must consider whether Cruz's conduct in committing aggravated assault and criminal damage caused an additional risk of harm beyond that of resisting arrest. *Id.* By taking the detective's Taser, Cruz put the detective at greater risk. Also, the incident took place at a restaurant, putting other patrons at greater risk. And, by breaking the Taser, Cruz caused separate harm to police property.

¶38 Because the *Gordon* test supports that Cruz engaged in separate acts, the superior court did not err by imposing consecutive sentences.

## CONCLUSION

¶39 We affirm Cruz's convictions and sentences.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR